UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM ANDREOLI,<br><br>                           Plaintiff,<br><br>v.<br><br>YOUNGEVITY INTERNATIONAL,<br>INC., et al.,<br><br>                           Defendants. | Case No.:  16-cv-02922-BTM-JLB<br><br>**ORDER DENYING IN PART<br>AND GRANTING IN PART<br>DEFENDANTS' MOTION TO<br>DISMISS [ECF NO. 12.]** |

On March 21, 2017, Defendants Youngevity International, Inc., Steve Wallach, Michelle Wallach, and David Briskie filed a motion to dismiss and/or strike Plaintiff William Andreoli's First Amended Complaint ("FAC").  (Def.s' Mot. to Dismiss ("Def.s' MTD"), ECF No. 12.)  For the reasons discussed below, the Court grants in part and denies in part their motion.

## I. BACKGROUND

In August 2011, Youngevity purchased a series of companies, FDI entities[1], from

---

[1] FDI entities consisted of the following companies: Financial Destination, Inc., a New Hampshire corporation ("FDI"); FDI Management, Inc., a New Hampshire corporation ("FDIM"); FDI Realty, LLC, a New Hampshire limited liability company ("FDIR"); and MoneyTRAX, LLC, a New Hampshire limited liability company ("MoneyTRAX").  (FAC ¶ 18.)

Plaintiff.  (FAC ¶¶ 20–22.)  The parties executed a purchase agreement in which Plaintiff agreed to sell all of his ownership interests in the FDI entities to Youngevity.  (Id. ¶ 22.)  A few months later, in October 2011, the parties executed the Amended and Restated Equity Purchase Agreement which superseded the original purchase agreement.  (Id. ¶ 23.)  The Amended Purchase Agreement contained a set of payment terms that commenced on October 25, 2011.  (Id. ¶ 30.)  In acquiring the FDI entities, Youngevity also assumed one of the FDI entities' mortgage obligations, which as of December 31, 2014 was approximately $1,986,000.  (Id. ¶ 26.)  The property owned by FDIR was a commercial building in New Hampshire which was occupied by FDI.  (Id. ¶ 45.)  The Amended Purchase Agreement provided for a separate closing date for the property because Defendants were not able to finance the property until a later date.  (Id. ¶ 46.)  However, Defendants agreed to pay the rent and monthly expenses until the deal closed.  (Id. ¶ 47.)  Immediately after the acquisition, Youngevity's Board of Directors appointed Plaintiff as Youngevity's president.  (Id. ¶ 28.)  Plaintiff remained in that position until November 30, 2015.  (Id. ¶ 29.)

In 2014, while Plaintiff remained employed by Youngevity, Defendants allegedly coerced Plaintiff into signing the First Amendment to the Amended Purchase Agreement[2], which changed the previous acquisition purchase price and payment terms from $20,000,000 to $6,000,000.  (Id. ¶¶ 36–43.)  Plaintiff also claims that Defendants refused to close on the FDIR transaction and only paid rent and related expenses until December 2015, leaving Plaintiff with the burden and cost of running the FDIR operation.  (Id. ¶ 58.)  Additionally, Plaintiff alleges that Defendants coerced him into resigning on November 30, 2015.  (Id. ¶ 67.)  Since February 2016, Defendants have defaulted on their obligations under the Amended Purchase Agreements, as well as

---

[2] The Amended and Restated Equity Purchase Agreement and First Amendment to the Amended and Restated Equity Purchase Agreement are the effective and final purchase agreements at issue in this action (collectively, "Amended Purchase Agreements").  (FAC ¶ 24.)

having stopped making commission payments for his distributorships and eventually terminated them. (Id. ¶¶ 82, 95–99.)

In March 2016, Youngevity and Dr. Joel D. Wallach, founder of Youngevity, filed an action against numerous individuals, including Plaintiff, who left Youngevity to form a competing multi-level marketing corporation, Wakaya Perfection, LLC. That action, *Youngevity, et al. v. Smith, et al.*, No. 16-cv-704-BTM-JLB ("Youngevity action"), remains before the Court. Before an answer was due in the Youngevity action, Plaintiff initiated this action on November 30, 2016. Plaintiff alleges the following causes of action: (1) breach of contract; (2) breach of employment contract; (3) breach of the implied covenant of good faith and fair dealing; (4) unjust enrichment/ restitution; (5) wrongful termination; (6) fraud; (7) civil conspiracy; (8) breach of fiduciary duty; (9) conversion; and (1) violations of California's Unfair Competition Laws ("UCL").

## II. DISCUSSION

### A. First to File

Defendants argue that Plaintiff's complaint should be dismissed under the first-to-file rule because the Youngevity action was filed before Plaintiff initiated this action.

The first-to-file rule is recognized as a doctrine of federal comity, which allows a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district. *Church of Scientology of California v. United States Dep't of the Army*, 611 F.2d 738, 749 (9th Cir. 1979). The first-to-file rule is meant to "serve[] the purpose of promoting efficiency well and should not be disregarded lightly." *Id.* at 750. While it generally applies to actions that are filed in separate district, courts have applied it to actions filed within the same district. *See Wallerstein v. Dole Dresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1294 (N.D. Cal. 2013); *see also Keen v. Omni Limousine*, No. 16-cv-01903-JCM-GWF, 2016 WL 6828199, at *2 (D. Nev. Nov. 18, 2016.) This case was originally filed before Judge Anthony J. Battaglia, but it was transferred to this Court pursuant to this district's low-number rule. Thus, the same concerns of judicial efficiency and uniformity are not present. The Court,

therefore, follows the lead of several courts in this circuit in declining to apply the first-to-file rule where the two actions at issue are pending before the same judge. *See, e.g.*, *Rodriguez v. Taco Bell Corp.*, No. 13-cv-01498-SAB, 2013 WL 5877788, at *6–7 (E.D. Cal. Oct. 30, 2013); *Henderson v. JPMorgan Chase Bank*, No. 11-cv-3428-PSG-PLAX, 2011 WL 4056004, at *2 (C.D. Cal. Sept. 13, 2011); *Sheehy v. Santa Clara Valley Transp. Auth.*, No. 14-cv-01325-PSG, 2014 WL 2526968, at *2 (N.D. Cal. June 4, 2014).

Defendants also argue that the claims should be dismissed because they would have been compulsory counterclaims in the Youngevity action but for Plaintiff filing this action before filing a responsive pleading. Federal Rule of Civil Procedure 13(a) requires a party to assert a counterclaim when it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a). "If a party fails to plead a compulsory counterclaim, he is held to waive it and is precluded by res judicata from ever suing upon it again." *Int'l Bhd. Of Elec. Workers v. G.P. Thompson Electric, Inc.*, 363 F.2d 181, 184 (9th Cir. 1966). Here, Plaintiff filed this action before a responsive pleading was required to be served, as there was a pending motion to dismiss. While the Ninth Circuit has not specifically addressed this issue, other circuits as well as district courts within this circuit have held that Rule 13(a) requires a compulsory counterclaim only if the party who desires to assert a claim has served a responsive pleading. *See MRW, Inc. v. Big-O Tires, LLC*, No. S-08-1732, 2008 WL 5113782, at *10 (E.D. Cal. Nov. 26, 2008) (citing to fifth, sixth, and seventh circuit cases holding that Rule 13(a) only requires a compulsory counterclaim to be pled if the party asserting the claim has served a pleading); *see also Luis v. Metro Life Ins. Co.*, 142 F. Supp. 3d 873, 878 (N.D. Cal. 2015) ("Rule 13 does not apply to every claim that could or should have been asserted in prior litigation. Indeed, the language of the rule denotes that preclusion will only apply to claims that should have been asserted in a 'pleading.'") Accordingly, the Court denies Defendants' motion to dismiss on this ground.

**B. California Code of Civil Procedure § 425.16, Anti-SLAPP Motion**

Alternatively, Defendants move to strike count ten under California's Anti-SLAPP

statute, California Code of Civil Procedure § 425.16. Defendants argue that count ten, a claim for violations of California's UCL, arises from protected activity—the filing of the Youngevity action.

California Code of Civil Procedure § 425.16, the Anti-Strategic Lawsuits Against Public Participation ("Anti-SLAPP") law, provides in relevant part:

> (b)(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.
>
> (2) In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

Courts apply a two-part test to determine whether an action is subject to an anti-SLAPP special motion to strike. *Navellier v. Sletten*, 29 Cal.4th 82, 88 (2002). First, the defendant must establish that "the challenged cause of action is one arising from protected activity." *Id.* Once a defendant makes a threshold showing that the act in question is protected, the burden shifts to the plaintiff. *Id.* To resist the special motion to strike, the plaintiff must establish "a probability of prevailing on the claim." *Id.* In federal court, "the claim should be dismissed if the plaintiff presents an insufficient legal basis for it, or if, on the basis of the facts shown by the plaintiff, 'no reasonable jury could find for the plaintiff.'" *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013) (citing *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001)). For a "mixed cause of action," a court may rule on a plaintiff's specific allegations of protected activity "rather than reward artful pleading by ignoring such claims if they are mixed with assertions of unprotected activity." *Baral v. Schnitt*, 1 Cal.5th 376, 393 (2016).

### 1. Step One: "Arising From" Requirement

First, Defendants must demonstrate that the challenged cause of action "'arise[s]

16-cv-02922-BTM-JLB

from' protected activity in which the defendant has engaged." *Park v. Bd. of Trs. of Cal. State Univ.*, 2 Cal.5th 1057, 1061 (2017) (quoting Cal. Civ. Proc. Code § 425.16(b)). The anti-SLAPP statute defines protected activity as:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. Proc. Code § 425.16(e).

"A claim arises from protected activity when that activity *underlies* or *forms the basis* for the claim." *Park*, 2 Cal.5th at 1062 (emphasis added). Courts ruling on anti-SLAPP motions must determine "what the defendant's activity is that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." *Id.* at 1063 (citations omitted). The mere fact that an action was triggered by protected activity does not mean that it "arose from that activity for the purposes of the anti-SLAPP statute." *Id.* at 1063; *see City of Cotati v. Cashman*, 29 Cal.4th 69, 78 (2002) ("[A] claim filed in response to, or in retaliation for, threatened or actual litigation is not subject to the anti-SLAPP statute simply because it may be viewed as an oppressive litigation tactic."). Thus, the only means by which a defendant can meet its burden under the anti-SLAPP statute is by demonstrating "that *the defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described in [Cal. Civ. Proc. Code § 425.16(e)]." *Parks*, 2 Cal.5th at 1063.

Here, Defendants argue that count ten, at least in part, arises from a protected activity because it is based on the filing of the Youngevity lawsuit. Apart from incorporating by reference the preceding allegations, Plaintiff's tenth cause of action

under the UCL is based on numerous alleged violations including violations of California Business and Professions Code Section 16600, Youngevity's fraudulent accounting practices, Youngevity's assertion of groundless claims against Plaintiff, and Youngevity's filing of a "sham lawsuit against [Plaintiff] in an attempt to deny further payments to [Plaintiff] for commissions and for payments for his companies." (FAC ¶¶ 219–28.) While Plaintiff appears to argue that his tenth cause of action is based solely on a violation of section 166600, on its face, the FAC states that "Youngevity violated the UCL in several ways" including filing its lawsuit and asserting groundless claims. (Id. ¶¶ 223, 225, 228.) The filing of a civil action qualifies as a protected activity under the anti-SLAPP statute. *Rusheen v. Cohen*, 37 Cal.4th 1048, 1056 (2006). Thus, Plaintiff's tenth cause of action arises from protected activity as it is in part based on protected activity that is not "merely incidental to the unprotected activity." *See Salma v. Capon*, 161 Cal. App. 4th 1275, 1287 (2008).

### 2. Step Two: Possibility of Success on the Merits

Having determined that Plaintiff's tenth cause of action is based in part on protected activity, the Court next turns to Plaintiff's probability of prevailing on the merits. As the Supreme Court of California has held, a plaintiff cannot defeat an anti-SLAPP motion by merely establishing a probability of prevailing on *any part* of a pleaded cause of action. *Baral*, 1 Cal.5th at 392. Instead, "the plaintiff must make the requisite showing as to each challenged claim that is based on allegations of protected activity." *Id.* Though how a plaintiff meets this standard varies with every case, "when the defendant seeks to strike particular claims supported by allegations of protected activity that appear alongside other claims within a single cause of action, the motion cannot be defeated by showing a likelihood of success on the claims arising from unprotected activity." *Id.* Because count ten is based on both protected and unprotected activity, the Court focuses on the sufficiency of the claims arising from protected activity.

Defendants argue that Plaintiff cannot prevail on his UCL claim on this ground because it is barred by California's litigation privilege under California Civil Code

section 47.  The litigation privilege renders communications made as part of a "judicial or quasi-judicial proceeding" absolutely privileged.  Cal. Civ. Code § 47(b).  The Supreme Court of California has clearly stated that the filing of a legal action is protected by the litigation privilege.  *Action Apartment Ass'n Inc. v. City of Santa Monica*, 41 Cal.4th 1232, 1249 (2007).  District courts within this circuit have similarly found that the litigation privilege bars UCL claims that are based on the filing of a legal action.  *See MGA Entm't, Inc. v. Mattel, Inc.*, No. 05-2727 NM, 2005 U.S. Dist. LEXIS 18594, at *36–37 (C.D. Cal. Aug. 26, 2005); *see also B-K Lighting, Inc. v. Vision3 Lighting*, 2008 U.S. Dist. LEXIS 113021, at *33 (C.D. Cal. May 23, 2008).  Here, to the extent that Plaintiff's UCL claim is based on the assertion of groundless claims and the filing of a "sham lawsuit," the claims are barred by the litigation privilege.  As such, Defendants' anti-SLAPP motion is granted in part and paragraphs 225 and 228 are ordered stricken.  *See Baral*, 1 Cal.5th at 393 ("We agree . . . that the Legislature's choice of the term 'motion to strike' reflects the understanding that an anti-SLAPP motion, like a conventional motion to strike, may be used to attack parts of a count as pleaded.").

### 3. Attorneys' Fees Award

Both parties move for attorneys' fees related to the filing and defense of the anti-SLAPP motion.

Under the anti-SLAPP statute, "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs."  Cal Civ. Proc. Code § 425.16(c)(1).  However, "[i]f the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5."  *Id.*

Here, Defendants moved to strike count ten in its entirety.  The Court only grants Defendants' motion in part because as a "mixed" cause of action, only certain allegations are subject to the anti-SLAPP statute.  California courts have broadly interpreted the phrase "prevailing party" to favor an award of attorney fees to a partially successful defendant.  *See Mann v. Quality Old Time Serv., Inc.*, 139 Cal. App. 4th 328, 339 (2006)

("We thus hold that a party who partially prevails on an anti-SLAPP motion must generally be considered a prevailing party unless the results of the motion were so insignificant that the party did not achieve any practical benefit from bringing the motion."); *see also ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1019 (2001). Applying that principle here, Defendants are entitled to attorneys' fees.

Defendants "bear the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *ComputerXpress, Inc.*, 93 Cal. App. 4th at 1020 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Defendants have not met their burden. Thus, the Court denies without prejudice their request for attorneys' fees. In renewing their motion, Defendants are directed to produce records sufficient to provide a proper basis for determining how much time was spent on the special motion to strike. *Id.*

**C. Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA") permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement. 9 U.S.C. § 4. "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). Thus, arbitration agreements "must be enforced, absent a ground for revocation of the contractual agreement." *Id.* A court's role is limited to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (citing *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

Defendants move the Court to compel Plaintiff to arbitrate count one of his FAC because it is allegedly subject to arbitration. In count one, Plaintiff claims that

16-cv-02922-BTM-JLB

Defendants breached the Amended Purchase Agreements by terminating four distributorships that Plaintiff controlled and refusing to make further payments. Defendants argue that Plaintiff should be compelled to arbitrate this claim because those distributorships are subject to Youngevity's distributor agreements which contain an arbitration provision that states:

> In the event of a dispute with the Company, Distributor and the Company agree to participate in mediation in an earnest attempt to resolve the dispute prior to submitting it to binding arbitration pursuant to the Commercial Arbitration Rules then in effect of the American Arbitration Association, provided, however, that injunctive relief sought by the Company against any party shall be excluded from this clause. Such Arbitration shall occur in San Diego, California. Louisiana Distributors, however, may arbitration in New Orleans, Louisiana.

(Def.s' MTD, Ex. C, § J9.)

While there is a strong policy favoring arbitration, "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Norcia v. Samsumg Telcoms. Am. LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)). Here, because Defendants seek to compel arbitration, they bear "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Id.* (citations omitted). When determining the validity of an agreement to arbitrate a court should apply "ordinary state-law principles that govern the formation of contracts to decide whether the parties agreed to arbitrate a certain matter." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under California law, "mutual assent is a required element of contract formation." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). Here, the parties dispute whether Plaintiff is bound by an arbitration provision. Defendants have submitted no evidence that Plaintiff or the four distributors signed a distributor agreement or an independent arbitration agreement with Youngevity. Instead, Defendants have merely submitted a blank distributor agreement with no signatures or names of the parties that are allegedly bound by the agreement and

16-cv-02922-BTM-JLB

arbitration provision contained therein. (Def.s' MTD, Ex. C–D.) Defendants have, therefore, not satisfied their burden of proving the existence of an agreement. While Plaintiff may ground his claims on distributor agreements and Youngevity's Policies and Procedures, without evidence that those same agreements contained an arbitration provision, the Court cannot compel Plaintiff to arbitrate his claims.

Accordingly, Defendants' motion is denied without prejudice. Defendants are free to raise the issue in a motion for summary judgment and submit authenticated agreements.

**D. Motion to Dismiss**

Defendants also move to dismiss Plaintiff's FAC pursuant to Federal Rules of Civil Procedure 12(b)(6), 8(a), and 9(b). The Court addresses each cause of action below.

### 1. Count 1—Breach of Contract

Plaintiff pleads three separate claims under his breach of contract cause of action. First, he alleges that Defendants breached their duties under the Amended Purchase Agreements by "failing to pay [him] the full amount of the required monthly payments for January 2016 and February 2016," and by failing to make any further payments for each month thereafter. (FAC ¶ 126.) Defendants argue that Plaintiff has failed to sufficiently state a breach of contract claim on this ground because he does not identify what specific terms of the Amended Purchase Agreements they allegedly breached. However, Plaintiff incorporates by reference preceding allegations in which he identifies specific terms of the Amended Purchase Agreements. (Id. ¶¶ 70–82.) He alleges that Defendants breached the contract because they failed to pay him in accordance with the Right of Exit procedures detailed in section 1.3(e) of the Amended Purchase Agreements. (Id. ¶¶ 76–80.) Therefore, Plaintiff has sufficiently stated a breach of contract claim on this ground.

Second, Plaintiff alleges that Defendants breached the Amended Purchase Agreements because they failed to complete the FDIR closing. Defendants argue that the

claim is barred by California's four-year statute of limitations for contracts because the Amended Purchase Agreements provided for a December 31, 2011 closing date and Plaintiff initiated this action on November 30, 2016. A "district court may grant a 12(b)(6) motion to dismiss on statute of limitations grounds only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000) (internal citations omitted). "Generally, the applicability of equitable tolling depends on matters outside the pleadings, so it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss . . . if equitable tolling is at issue." *Lien Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003 (9th Cir. 2006).

The provision in the Amended Purchase Agreements states that "the Equity Interests of FDIR under this Agreement ("the FDIR Closing") shall be effective at 12:01 a.m. on or before December 31, 2011, or such other date mutually agreed by Purchaser and Seller, in such manner and at such place as determined by the parties hereto (the "FDIR Closing Date")." (FAC, Ex. A, 6.) Plaintiff argues that the statute of limitations does not bar his claim because the original deadline was extended by the parties' subsequent communications and actions. Plaintiff alleges that "Defendants intentionally dragged their feet, ignored the steps completed by [Plaintiff], and intentionally re-started the process from the beginning at each of [Plaintiff's] repeated attempts to conclude this aspect of the acquisition of the FDI Entities." (FAC ¶ 52.) Defendants, as late as 2015, submitted documents to the SEC stating that they had "assumed mortgage guarantee obligations made by FDI . . . ." (Id. ¶ 26.) Under California law, it is well established that a defendant may be estopped from asserting the statute of limitations as a defense where he has improperly induced the plaintiff to delay the filing of a lawsuit. *Adam v. Cal. Mut. Bldg & Loan Ass'n*, 18 Cal.2d 487, 488–89 (1941). Here, Plaintiff's allegations are sufficient to withstand a motion to dismiss based on the statute of limitations.

Alternatively, Defendants argue that Plaintiff cannot maintain an action for

Youngevity's failure to close on the transaction because the Amended Purchase Agreements expressly preclude it. The relevant provisions states in full:

> The parties acknowledge and agree and that the failure to Close the purchase and sale of the Equity Interests shall not cause or result in any Damages (as defined in Section 7.2) to any party, and no party shall have any recourse or cause of action against another party for not Closing the transaction.

(FAC, Ex. A, 6.)

Section 7.2 of the Amended Purchase Agreement discusses each parties' indemnification obligations. While a district court may resolve a contractual claim on a motion to dismiss when the terms of the contract are unambiguous, if there is doubt as to what the parties intended, the motion should be denied. *Leghorn v. Wells Fargo, N.A.*, 950 F. Supp. 2d 1093, 1117 (N.D. Cal. 2013). Because the parties dispute whether the contract precludes recovery on this claim, the Court denies Defendants' motion on this ground.

### 2. Count 2—Breach of Employment Contract

Defendants move to dismiss Plaintiff's breach of employment contract claim arguing that he has not sufficiently pled a constructive discharge. To plead a constructive discharge, a plaintiff must plead and prove "that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." *Turner v. Anheuser-Busch, Inc.*, 7 Cal.4th 1238, 1251 (1994).

"In order to amount to a constructive discharge, adverse working conditions must be unusually 'aggravated' or amount to a 'continuous pattern' before the situation will be deemed intolerable." *Id.* at 1247. Here, Plaintiff alleges that Defendants substantially interfered with his ability to perform his job and subjected him to oppressive and debilitating employment conditions. (FAC ¶¶ 68, 152.) He alleges that Defendants embarrassed him in front of co-workers and potential

business contacts, conducted illegal business transactions without his knowledge, and demanded that he perform menial work among many other things. (Id. ¶ 103.) Accordingly, Plaintiff has sufficiently pled his claim and Defendants' motion to dismiss this claim is denied.

### 3. Count 3—Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendants move to dismiss Plaintiff's third claim for a breach of the implied covenant of good faith and fair dealing, arguing that it cannot be sustained as a separate cause of action from his breach of contract claims.

"A breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1394 (1990). "If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Id.* at 1295. Here, Plaintiff alleges that Defendants violated the implied covenant "by failing to pay the amounts due under the Amended Purchase Agreements after receiving the FDI Entities, failing to complete the necessary steps to close on the acquisition of FDIR, failing to pay the Right of Exit amounts under the Amended Purchase Agreements, failing to pay the commissions due to the Four Distributorships, failing to terminate [Plaintiff] only for cause and failing to pay termination compensation." (FAC ¶ 164.) These alleged acts are the same as those underlying Plaintiff's breach of contract claims. Thus, this claim is superfluous and Defendants' motion to dismiss this cause of action is granted with leave to amend.

### 4. Count 4—Unjust Enrichment

Defendants move to dismiss Plaintiff's unjust enrichment claim because it is not a cognizable cause of action under California law. California case law remains unsettled as to whether a plaintiff may state a cause of action for unjust enrichment. *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). The Ninth Circuit,

however, construes an unjust enrichment cause of action as a quasi-contract claim seeking restitution.  *Id.* (citing *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)).  However, there is no action in quasi-contract "where there exists between the parties a valid express contract covering the same subject matter." *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014).  Here, Plaintiff seeks "restitution and disgorgement of all amounts due to [him] that Youngevity has withheld from [him] *under* the Purchase Agreements."  (FAC ¶ 179.)  Therefore, he cannot maintain a quasi-contract cause of action based on an already existing contract.

While Plaintiff is free to plead an alternative theory of liability and allege that the Amended Purchase Agreements are either void or were rescinded because they were obtained through coercion, he clearly asserts his rights *under* the agreements.  *See Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1389 (2012).

Accordingly, Defendants' motion to dismiss Plaintiff's unjust enrichment claim is granted.  However, in the event that Plaintiff wishes to plead an alternative theory, he is granted leave to amend.

### 5.  Count 5—Wrongful Termination in Violation of Public Policy

To support a claim for wrongful discharge in violation of public policy, a plaintiff must prove that his "dismissal violated policy that is (1) fundamental, (2) beneficial for the public, and (3) embodied in a statute or constitutional provision."  *Turner v. Anheuser-Busch, Inc.*, 7 Cal.4th 1238, 1256 (1994).  Defendants argue that Plaintiff has insufficiently pled this claim.  The Court agrees.

While Plaintiff alleges that Defendants shipped unregistered products into Mexico without the proper licensing and registration and received funds from Mexican distributors without paying Mexico the required sales tax, among other things, he does not identify which statutory or constitutional provisions Defendants violated in doing so.  (FAC ¶ 109.)  Moreover, he has not alleged that he opposed such conduct and that Defendants forced him to resign because of his opposition or unwillingness to engage in these illegal activities.  Indeed, he claims that they engaged in such illegal activities

without his knowledge.  (Id. ¶ 108.)

Accordingly, Defendants' motion to dismiss this claim is granted with leave to amend.

### 6. Count 6—Fraud

Defendants seek to dismiss Plaintiff's sixth claim, arguing that he has failed to sufficiently plead fraud.

To state a claim for fraudulent misrepresentation, a plaintiff must allege: (1) a misrepresentation; (2) knowledge of falsity; (3) intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal.4th 631, 368 (1996).  When pleading fraud, Federal Rule of Civil Procedure Rule 9(b) "requires more specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG* LLP, 476 F.3d 756, 764 (9th Cir. 2007).  Plaintiff pleads that "at the time the amendments to the Equity Purchase Agreement was taking place, Defendants made assurances and promises that the FDIR Closing would take place, even though the Control Persons were determined to prevent the FDIR Closing from ever taking place." (FAC ¶ 195.)  However, these general allegations are insufficient to meet Rule 9(b)'s heightened pleading standard.  Therefore, Defendants' motion to dismiss Plaintiff's fraud claim is granted with leave to amend.

### 7. Count 7—Civil Conspiracy

As to Plaintiff's seventh claim for civil conspiracy, Defendants argue that it should be dismissed because it cannot stand as a separate cause of action.

Under California law, civil conspiracy is not a separate and distinct cause of action. *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1228 (9th Cir. 1997).  However, it is "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510–11 (1994).  Because a civil conspiracy depends on the

commission of an actual tort, the better practice is to make the allegations for a civil conspiracy a part of the cause of action for the underlying wrong. *Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 948 (N.D. Cal. 2003). Moreover, a corporation cannot conspire with its employees or agents who are acting in their official capacity. *Black v. Bank of America*, 30 Cal. App. 4th 1, 6 (1994) ("To hold that a subordinate employee of a corporation can be liable for conspiring with the corporate principal would destroy what has heretofore been the settled rule that a corporation cannot conspire with itself.").

Here, the Court dismisses Plaintiff's civil conspiracy cause of action for two reasons. First, it is unclear for which underlying torts Plaintiff is alleging a civil conspiracy. Second, Plaintiff alleges that Defendants Steve Wallach, Michelle Wallach, and Briskie "furthered the conspiracy by making corporate decisions for Youngevity or lent aid and encouragement to Youngevity or ratified and adopted the acts of Defendant Youngevity, ("the Conspirators") and are responsible for the harm because they were part of a conspiracy to commit those acts." (FAC ¶ 206.) As discussed above, "[w]hen a corporate employee acts in the course of his or her employment, on behalf of the corporation, there is no entity apart from the employee with whom the employee can conspire." *Black*, 30 Cal. App. at 6. While Plaintiff can allege conspiracies between the individual Defendants if they acted beyond the scope of their employment, he has not done so here. *See Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773, 785 (1979) ("Directors and officers of a corporation are not rendered personally liable for its torts merely because of their official positions, but may become liable if they directly ordered, authorized or participated in the tortious conduct."). As such, Defendants' motion to dismiss Plaintiff's seventh cause of action is granted. Plaintiff is granted leave to amend his civil conspiracy allegations, but if he chooses to do so, he should incorporate the allegations into each underlying wrong.

### 8. Count 8—Breach of Fiduciary Duty

A plaintiff alleging breach of fiduciary duty by corporate officers and directors

must show: (1) the existence of a fiduciary duty; (2) the breach of that relationship; and (3) damages proximately caused by the breach. *Amtower v. Photon Dynamics, Inc.* 158 Cal. App. 4th 1582, 1599 (2008). Generally, whether a fiduciary duty exists is a question of law. *Id.* Directors owe a fiduciary duty to both their corporation and shareholders. *Oakland Raiders v. Nat'l Football League*, 131 Cal. App. 4th 621, 632 (2005).

In his FAC, Plaintiff alleges that Defendants Briski, Steve Wallach, and Michelle Wallach breached fiduciary duties owed to him as both Youngevity's president and a shareholder. In his opposition, however, he appears to abandon the claim that Defendants owed him a duty as president and instead focuses on the duty owed to him as a shareholder. Because Plaintiff is not asserting a derivative action, Plaintiff must establish his case as a direct action.

Under California law, "a direct action is one filed by the shareholder individually (or on behalf of a class of shareholders to which he or she belongs) for injury to his or her interest as a *shareholder*." *Oakland Raiders*, 131 Cal. App. 4th at 650 (internal citations omitted). "Examples of direct shareholder actions include suits brought to compel the declaration of a dividend, or the payment of lawfully declared or mandatory dividends, or to enjoin a threatened ultra vires act or enforce a shareholder voting rights." *Schuster v. Gardner*, 127 Cal. App. 4th 305, 313 (2005). Here, Plaintiff alleges that Defendants "breached their fiduciary duty to [him] by, among other things, de-legitimizing his role as president and undermining his authority for that position, breaching contracts that were owed to him, reducing monies that were owed to him, engaging in illegal business behind his back, as well as other unlawful conduct that has been addressed in this complaint." (FAC ¶ 212.) Plaintiff does not appear to be claiming an injury to his interests as a shareholder, but is instead claiming injury to his interests as Youngevity's former president and as a party to the employment contract and Amended Purchase Agreements. Therefore, Plaintiff fails to adequately plead a breach of fiduciary duty and Defendants' motion to dismiss this claim is granted with leave to amend.

//

### 9. Count 9—Conversion

Defendants seek to dismiss Plaintiff's ninth cause of action for conversion. Under California law, "[c]onversion is the wrongful exercise of dominion over the property of another." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010). To establish conversion, a plaintiff must demonstrate: "(1) [his or her] ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Id.* "Money cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved . . . ." *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLC*, 150 Cal. App.4th 384, 395 (2007). However, it is unnecessary that "each coin or bill be earmarked." *Fischer v. Machado*, 50 Cal. App.4th 1069, 1072 (1996). At the pleading stage in federal court, it is only necessary for a plaintiff to allege an amount of money that is "capable of identification," rather than specifically identify the sum that would be required to prove the claim in a motion for summary judgment. *Natomas Gardens Inv. Group v. Sinadinos*, 710 F. Supp.2d 1008, 1019–20 (E.D. Cal. 2010).

Here, Plaintiff alleges that Defendants converted personal belongings and money owed to him under his distributorships and other agreements. (FAC ¶ 217.) Plaintiff's claim for conversion of personal belongings is insufficiently pled because he does not state what "specific property" was taken from him. *See Fremont Indem. Co. v. Fremont Gen. Corp.*, 148 Cal. App. 4th 97, 123 (2007). Nonetheless, the conversion claim stands as to money allegedly owed to him under his distributorships. Plaintiff alleges that Defendants wrongfully terminated his four distributorships and withheld all commission payments associated with those distributorships. (FAC ¶ 217, Ex. D.) Therefore, Defendants' motion to dismiss Plaintiff's conversion claim is denied.

### 10. Count 10—Unfair Competition Law

Lastly, Defendants move to dismiss Plaintiff's UCL claim because it is legally insufficient.

As a threshold matter, because Plaintiff's UCL claim is in part based on protected speech, the Court strikes the allegations referring to a "sham lawsuit" or the filing of groundless claims. Thus, what remains, are Plaintiff's allegations that Defendants violated the UCL because: (1) they imposed unlawful restraints on Plaintiff's, his family's, and other distributors' ability to engage in lawful business in violation of California Business and Professions Code Section 16600; (2) they intentionally used inaccurate calculations in determining how much they owed him, thereby violating the Amended Purchase Agreements; and (3) they engaged in fraudulent accounting practices and violated securities laws by failing to account for money they lawfully owe him and "caus[ing] their books to look more profitable and healthier than they otherwise should." (FAC ¶¶ 227, 232, 234.)

Plaintiff's claim fails as to his second and third theories. First, he has no standing to assert a claim for Defendants' alleged fraudulent accounting practices and violations of security laws. Standing under the UCL is substantially narrower than federal standing under Article III, section 2 of the U.S. Constitution. *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 324 (2011). Under the UCL, only a plaintiff who has suffered an injury in fact and has lost money or property as a result of unfair competition has standing to bring an action for relief. *Id.* at 320–21; Cal. Bus. & Prof. § 17204. To satisfy this standing requirement, the California Supreme Court requires a plaintiff to "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e. *economic injury*, and (2) show that the economic injury was the result of, i.e., caused by the unfair business practice . . . that is the gravamen of the claim." *Id.* at 322. Plaintiff has provided no facts to demonstrate how these alleged unfair business practices have caused *him* an injury in fact.

Second, as to the allegations that Defendants breached the Amended Purchase Agreements, he has failed to demonstrate that this conduct falls within the UCL's interpretation of an unlawful, unfair or fraudulent business practice. The UCL prohibits

"unlawful, unfair or fraudulent business act[s] or practice[s]." Cal. Bus. & Prof. Code § 17200. "Each of these three adjectives captures a separate and distinct theory of liability." *Rubio v. Capitol One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010). As to an unlawful business practice, the UCL's coverage is broad and sweeping, and embraces "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999). "By proscribing 'any unlawful' business practice, 'section 17200 borrows violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." *Id.* (quoting *State Farm Fire & Casual Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1103 (1996)). Under the unfair prong of the UCL, a plaintiff must allege sufficient facts to demonstrate that a defendant's "unfair" business practice: (1) offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers; or (2) is tied to a legislatively declared policy. *See Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 736 (9th Cir. 2007); *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886–87 (1999) (internal quotations omitted). Finally, a fraudulent business practice is one that is likely to deceive the public and can be based "on representations to the public which are untrue, and also those which may be accurate on some level, but will nonetheless tend to mislead or deceive." *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1471 (2006) (internal citations omitted). Plaintiff has provided no facts to support that the alleged breach of the Amended Purchase Agreements is actionable as an unfair, unlawful, or fraudulent business practice under the UCL.

Nonetheless, Plaintiff's UCL claim survives as to Youngevity's alleged unlawful restraints on lawful business. Plaintiff alleges that Youngevity's Policies and Procedures violate the express terms of California Business and Professions Code Section 16600, which states: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that

extent void." (FAC ¶¶ 221–222.)  Because the UCL borrows from violations of other laws, Plaintiff has sufficiently pled a UCL violation.  *See Cel-Tech Commc'ns*, 20 Cal.4th at 180.

Defendants also argue that Plaintiff cannot recover under the UCL.  The UCL allows courts to order restitution and/or "the disgorgement of money that has been wrongfully obtained or, in the language of the statute, an order 'restoring money which may have been acquired by means of unfair competition.'"  *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1266 (1992) (quoting Cal. Bus. & Prof. Code § 17203).  As such, section 17203 does not provide for monetary damages.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1148 (2003) ("The fact that the 'restore' prong of section 17203 is the only reference to monetary penalties in this section indicates that the Legislature intended to limit the available monetary remedies under the act.").  The UCL also authorizes injunctive relief as a remedy against a person or entity engaging in unfair competition.  Bus. & Prof. Code § 17203.

Plaintiff claims that Defendants' enforcement of Youngevity's unlawful Policies and Procedures led it to withhold commission payments associated with the four distributorships.  As such, Plaintiff has properly alleged a claim for restitution.  Conversely, Plaintiff does not sufficiently plead a claim for injunctive relief because he has not alleged that he is likely to face a similar future harm.  *See L.A. v. Lyons*, 461 U.S. 95, 111 (1983).

Accordingly, Defendants' motion to dismiss Plaintiff's UCL claim is denied.

**E. Motion to Consolidate**

To the extent that any causes of action survive this motion, Defendants seek to consolidate this matter with the underlying Youngevity action.  Plaintiff opposes

16-cv-02922-BTM-JLB

consolidation arguing that unlike in the Youngevity action, the issues here primarily relate to breaches of the employment contract and Amended Purchase Agreements.

Rule 42(a) of the Federal Rules of Civil Procedure allows a district court to consolidate cases when actions before it involve a "common question of law or fact." Fed. R. Civ. P. 42(a). District courts have broad discretion to grant or deny consolidation. *Investors Research Co. v. United States Dist. Court for Cent. Dist.*, 877 F.2d 777, 777 (9th Cir. 1989). In determining whether consolidation is appropriate, a court "weighs the saving of time and effort that consolidation would produce against any inconvenience, delay, or expense that it would cause." *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984). Therefore, even where a common question exists, consolidation is inappropriate if "it leads to inefficiency, inconvenience, or unfair prejudice to a party." *EEOC v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998).

At this juncture, the Court finds that consolidation is not appropriate. The parties in the underlying Youngevity case have already submitted their motions for summary judgment. While there is some overlap in factual and legal issues, this case primarily depends on the alleged breaches of Plaintiff's employment contract and the Amended Purchase Agreements. Accordingly, the Court denies Defendants' motion to consolidate without prejudice. The parties may raise the issue at the time of the Youngevity action's pretrial conference.

### III. CONCLUSION

For the reasons discussed above, Defendants' Anti-SLAPP motion is **GRANTED**. The Court strikes paragraphs 225 and 228 from Plaintiff's FAC. Defendants' motion to compel arbitration is **DENIED** without prejudice. Defendants' 12(b)(6) motion is **GRANTED IN PART** and **DENIED IN PART**. Defendants' motion to dismiss is granted as to claims three through eight with leave to amend.

//

//

Any amended complaint must be filed within 15 days of the entry of this Order and must comply with Local Rule 15.1(c).  Lastly, Defendants' motion to consolidate is **DENIED** without prejudice.

**IT IS SO ORDERED**.

Dated: March 23, 2018

_____
Barry Ted Moskowitz, Chief Judge
United States District Court

16-cv-02922-BTM-JLB