Peter A. Arhangelsky, Esq. (SBN 291325)
parhangelsky@emord.com
Eric J. Awerbuch (pro hac vice)
eawerbuch@emord.com
Joshua S. Furman (pro hac vice)
jfurman@emord.com
Emord & Associates, P.C.
2730 S. Val Vista Dr.
Bldg. 6, Ste. 133
Gilbert, AZ 85295
Phone: (602) 388-8899
Fax: (602) 393-4361
Attorneys for Defendants/Counterclaimant

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM ANDREOLI,<br><br>　　　　　Plaintiff,<br>　v.<br><br>YOUNGEVITY INTERNATIONAL INC. et al.,<br><br>　　　　　Defendants.<br>_____<br>YOUNGEVITY INTERNATIONAL CORP.,<br><br>　　　　　Counterclaim Plaintiff,<br><br>　　v.<br><br>WILLIAM ANDREOLI,<br><br>　　　　　Counterclaim Defendant. | Case No.: 3:16-CV-02922-BTM-JLB<br><br>**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT ON DISTRIBUTOR CLAIM**<br><br>Judge:　Barry T. Moskowitz<br>Magistrate: Jill L. Burkhardt<br><br>Hearing Date: September 14, 2018 at 11:00 AM<br><br>**NO ORAL ARGUMENT UNLESS ORDERED BY COURT** |

Defendants (collectively "Youngevity") submit this Reply to Plaintiff William Andreoli's Opposition to Youngevity's Motion for Summary Judgment on Andreoli's claim that Youngevity failed to pay distributorships (ECF No. 70), which is part of Count One in Andreoli's Complaint (ECF No. 22 at ¶¶ 130–39) (the "Distributor Claim").

## I. INTRODUCTION

Andreoli seeks to recover money Youngevity allegedly owes to four former Youngevity distributorships (the "Four Distributorships"). ECF No. 22 at ¶¶ 130–39. Youngevity provided evidence proving each of the Four Distributorships were bound by Youngevity's Distributor Agreement, which contains an arbitration clause requiring Andreoli to arbitrate his Distributor Claim. ECF Nos. 56-1, 56-2. Andreoli does not credibly dispute that each of the Four Distributorships are bound by Youngevity's Distributor Agreement. Instead, Andreoli argues only that he did not personally agree to be bound by Youngevity's Distributor Agreement. While false, that fact is immaterial. Where, as here, an individual brings a cause of action on behalf of an entity that is bound by an arbitration provision, that individual is also bound by the arbitration provision which applies to the entity. Regardless, the undisputed facts establish that Andreoli is personally bound by the arbitration clause; he agreed to Youngevity's Distributor Agreement through his agents. This Court should therefore grant Youngevity summary judgment on the Distributor Claim. Moreover, because the Distributor Claim represents only a portion of one claim (out of eleven in this case), and because that claim involves a discrete factual inquiry, this Court should not stay the litigation pending arbitration.

## II. ARGUMENT

### A. The Undisputed Facts Establish the Four Distributorships Are Bound By the Arbitration Provision

Youngevity's undisputed evidence proves the Four Distributorships bound by the Distributor Agreement, which contains a binding arbitration clause. ECF Nos. 56-1, 56-2. Andreoli does not (and cannot) challenge Youngevity's evidence. Instead, Andreoli argues that "Youngevity fails to provide evidence explaining how its allegedly conclusive information was generated and captured." ECF No. 70 at 5. To the contrary, Steve

1 Wallach's declaration explained how Youngevity "maintains an activity log which tracks each instance when a Youngevity distributor logs in to their back office online and agrees to Youngevity's Distributor Agreement then in effect." ECF No. 56-2 at ¶ 7. Wallach's declaration further explained that each screenshot appended to his declaration revealed the Four Distributorship's assent to the Youngevity Distributor agreement, and that such "records [are] maintained by Youngevity in its usual course of business." *Id.* at ¶¶ 10–15. Andreoli raises no genuine issue of material fact concerning the authenticity of Youngevity's screenshots and, so, the application of the Distributor Agreement to the Four Distributorships is not here in dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Instead, Andreoli disputes *who* logged into the Four Distributorship accounts and accepted Youngevity's Distributor Agreement in the process. ECF No. 70 at 4 (Andreoli arguing that "Youngevity's documents do not establish that Andreoli agreed to the arbitration terms of the Youngevity Distributor Agreement"), 5 (Andreoli arguing that "[e]ven if *someone* logged in to the system and accepted the terms of the Distributor Agreement, nothing indicates that it was Andreoli") (emphasis in original). However, that question of fact is immaterial. Andreoli brings his Distributor Claim on behalf of the Four Distributorships, and it is undisputed that: (1) those Four Distributorships could not exist unless bound by Youngevity's Distributor agreement (ECF Nos. 12-2 at ¶ 5, 56-2 at ¶ 5, 56-3 at 4); and (2) the distributorships are themselves bound by Youngevity's Distributor agreement (ECF Nos. 56-2 at ¶¶ 10–15, 56-3 at 61–72). Indeed, Andreoli's very claim for relief is based on his interpretation of the Distributor Agreement; contrariwise, his argument in opposition, if accepted, leaves him without a contractual basis for relief. He cannot, on the one hand, argue an interpretation of the Distributor Agreement as a basis for relief and, on the other, argue he is not a party to that Agreement. It is also, passing strange, for Andreoli, the former President of Youngevity who oversaw distributor compliance with the Youngevity Distributor Agreement, to argue that his own Four Distributorships were somehow not bound by the very agreement he enforced over all such distributorships.

Recent precedent from the Central District of California is instructive. *See En Pointe Tech. Sales, LLC v. Ovex Tech. (Private) Ltd.*, Case No. 2:17-cv-04362, 2018 WL 4006524, at *5 (C.D. Cal. Aug. 17, 2018). In *En Pointe*, an individual brought claims on behalf of a corporation where that corporation was bound by an agreement containing an arbitration provision. The individual was the "sole owner and beneficiary of the business being run through" the entity bound by the arbitration provision. *Id.* The court explained that because the individual was "suing on behalf of [the corporation]," that individual was "thus bound by the terms of the Agreement—including the arbitration provision." *Id.*

So too here, Andreoli is the sole owner and beneficiary of the Four Distributorships. ECF No. 22 at ¶¶ 84 (identifying the Four Distributorships as "Andreoli's multilevel marketing distributorships"), 88 (identifying the Four Distributorships as being "under Andreoli's control"), 134 (alleging that "Andreoli has complied with Youngevity's requirements for the Four Distributorships"). His claims are advanced on behalf of the distributorships. According to Andreoli's allegations, Youngevity owes money to the Distributorships and not to Andreoli personally. ECF No. 22 at ¶¶ 135 (alleging that Youngevity has "made no commission payments **to the Four Distributorships**…") (emphasis added), 137 (alleging that Youngevity "had a duty to pay commissions **due to the Four Distributorships** under their Distributor Agreements") (emphasis added), 138 (alleging that "[a]s a result of [Youngevity's] failure and refusal to pay the commission amounts **due on the Four Distributorships**") (emphasis added). Andreoli specially alleges in his prayer for relief that "Youngevity breached its payment obligations **to The Four Distributorships**" and asks the Court to require "Youngevity to pay all amounts due **to the Four Distributorships** under the Distributor Agreements." ECF No. 22 at 35–36, ¶¶ L, O (emphasis added). In sum, the undisputed facts establish that: (1) Andreoli brings his Distributor Claim on behalf of the Four Distributorships and pursuant to a construction of the Youngevity Distributor Agreement; (2) those distributorships could not have existed without also being bound under Youngevity's Distributor Agreement; and (3) the Four Distributorships are actually bound by Youngevity's Distributor Agreement. Whether Andreoli himself personally

accepted the terms is irrelevant to whether the Four Distributorships were bound. That is particularly so where, as here, the distributorships were held by entities that are operated or controlled by individuals (i.e., Andreoli) and agents. This Court should therefore grant summary judgment on the Distributor Claim.

The Court should also grant summary judgment because undisputed facts establish that Andreoli, through his agent(s), was personally bound by the arbitration provision. "California courts have repeatedly enforced arbitration agreements against and in favor of persons who never agreed to arbitrate the dispute." *Matthau v. Super. Ct.*, 60 Cal. Rptr. 3d 93, 98 (Cal. Ct. App. 2007) (citation omitted). "An agent, for example, may have implied authority to agree to arbitration on behalf of its principal." *Id.* (citation omitted). The precedent is clear that "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). "The relation of agency need not depend upon express appointment and acceptance thereof, but it may be, and frequently is, implied from the words and conduct of the parties and the circumstances of the particular case." *Rodriguez v. SGLC, Inc.*, No. 2:08-cv-01971-MCE-KJN, 2012 WL 5704403, at *14 (E.D. Cal. Nov. 15, 2012) (quoting *Smith v. Schuttpelz*, 33 P.2d 836 (Cal. 1934)). "Agency results 'from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" *Asante Tech., Inc. v. PMC-Sierra, Inc.*, 164 F. Supp. 2d 1142, 1148 (N.D. Cal. 2001) (quoting Restatement of the Law of Agency, 2d, § 1 (1957)). While agency is usually a question of fact, "where the evidence is undisputed, the issue becomes one of law." *Goodness Films, LLC v. TV One, LLC*, Case No. CV 12-8688-GW(JEMx), 2013 WL 12306439, at *9 (C.D. Cal. Oct. 21, 2013) (quoting Witkin, Summary of Cal. Law: Agency & Employment, § 93, p. 140).

Here, the undisputed facts establish that even if Andreoli did not access the Youngevity system himself, one or more agents for the Four Distributorships did so on his behalf. ECF No. 70-1 at ¶¶ 6–7. Whether the individual accessing those accounts was Andreoli, Kolinski, or another agent who accessed the system is irrelevant because

those individuals agreed, on behalf of Andreoli, to Youngevity's Distributor agreement. Andreoli's own argument concedes his agent (Kolinski) likely accessed the system on his behalf. ECF No. 7 at 5. Andreoli states in his declaration that "Mike Kolinski … managed [his] distributor positions and the ability to log in, accept the Distributor Agreement, and access the back-office information for the distributors." ECF 70-1 at ¶ 6. He similarly states that "[a]ny customer service representative from the … offices of Youngevity International, Inc. had the ability to log in, access the Distributor Agreement, and access the back-office information for distributors." *Id.* at ¶ 7. Those undisputed facts establish Kolinski or the customer service representatives had Andreoli's authority to manage the Four Distributorships and bind Andreoli to Youngevity's Distributor Agreement. Therefore, if Kolinski or another Andreoli agent accessed Andreoli's account and accepted Youngevity's Distributor Agreement, they did so as Andreoli's agents thereby binding Andreoli and the Four Distributorships to the arbitration provision.

Even if the Court found those working for Andreoli not his agents, the Court should still find Andreoli bound by the Distributor Agreement. Andreoli's claim seeks to interpret the Distributor Agreement in a claim for relief thereunder, and there is no evidence that any Youngevity representative agreed to Youngevity's Distributor Agreement contrary to Andreoli's instructions. He also fails to provide any supporting details in aid of his self-serving and conclusory statement that such unidentified individuals did not accept the Distributor Agreement on his behalf. This Court need not credit such self-serving testimony. *See F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."). Indeed, such theoretical conjecture is insufficient to defeat a motion for summary judgment. *See Automobile Club of S. Cal. v. Auto Club, Ltd.*, No. CV 05-3949 RSWL(CWX), 2007 WL 704892, at *1 (C.D. Cal. Mar. 6, 2007) ("any dispute as to material facts must be genuine and not merely a theoretical possibility" and "a 'genuine' dispute is one that is supported by evidence sufficient to permit a reasonable jury to find

in favor of the nonmoving party") (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)). This Court should therefore grant Youngevity summary judgment on the Distributor Claim in favor of arbitration.

### B.  Rule 56(d) Does Not Apply

Andreoli argues summary judgment inappropriate under Fed. R. Civ. Proc. 56(d) ("Rule 56(d)") because he needs discovery to oppose the Motion. ECF No. 70 at 5. Andreoli failed to meet his Rule 56(d) burden. The party seeking a Rule 56(d) continuance bears the burden to "proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1996) (citations omitted).[1] In ruling on a 56(d) motion, a district court considers "whether the movant had sufficient opportunity to conduct discovery[,]" "whether the movant was diligent[,]" "whether the information sought is based on mere speculation[,]" and "whether allowing discovery would preclude summary judgment." *Martinez v. Columbia Sportwear USA Corp.*, 553 Fed. Appx. 760, 761 (9th Cir. 2014) (collecting cases and affirming district court's denial of a Rule 56(d) request). Here, all four factors weigh against Andreoli.

As to the first and second factors, Andreoli had sufficient opportunity to conduct discovery but was not diligent. Discovery began May 7, 2018, following the parties' Rule 26(f) conference. ECF No. 44 at ¶ 2; *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. CIV. 08CV1166-IEGPOR, 2008 WL 3992353, at *1 (S.D. Cal. Aug. 28, 2008) (discovery may begin after the Rule 26(f) conference). Andreoli did not serve any discovery on Youngevity until August 24th, 3.5 months after the beginning of discovery. Awerbuch Decl., at ¶ 3. Indeed, Andreoli waited more than one month from the time Youngevity filed its Motion for Summary Judgment on the Distributor Claim before

---

[1] While *Nidds* cited Fed. R. Civ. P. 56(f), the 2010 Amendments to the Federal Rules of Civil Procedure moved subsection (f) to subsection (d), and this change was intended not to cause any "substantial change." *See* 2010 Advisory Cmte. Notes to Fed. R. Civ. P. 56.

serving any discovery, and only served discovery requests on the same date he filed his Opposition. *Id.*; ECF No. 70. Andreoli has not noticed any depositions. *Id.* at ¶ 4. In sum, Andreoli has had months to obtain discovery but has not been diligent.

As to the third and fourth factors, the information Andreoli seeks is based on mere speculation and could not result in a factual dispute as to whether the Four Distributorships are bound by Youngevity's Distributor Agreement. Andreoli's Declaration states that he intends to discover information relevant to the authenticity of screenshots. *See* ECF No. 70-1 at ¶ 9. However, Andreoli failed to identify any specific documents or depositions that would actually challenge the authenticity of those files. *Id.* at ¶¶ 9–11. The Ninth Circuit rejects non-particularized requests for additional discovery in Rule 56(d) requests. *See e.g.*, *Stevens v. Corelogic, Inc.*, No. 16-56089, --- F.3d ---, 2018 WL 3751423, at *9 (9th Cir. June 20, 2018). Regardless, no such discovery will allow Andreoli to dispute the fact that the Four Distributorships are bound by Youngevity's Distributor Agreement. Instead, Steve Wallach's declarations prove that the screen shots are part of an activity log Youngevity maintains in its normal course of business and that each Youngevity distributorship is bound by the Distributor Agreement. ECF No. 56-2 at ¶¶ 7–15.

Moreover, in seeking a Rule 56(d) continuance, the "requesting party must show that: (1) it has set forth in affidavit form *the specific facts* it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Stevens*, 2018 WL 3751423 at *8 (emphasis original) (quotation omitted). "Failure to comply with these requirements is a proper ground for denying discovery and proceeding to summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (quotation omitted). Here, Andreoli's Declaration fails to identify *any specific* facts he hopes to elicit from discovery. *See* ECF No. 70-1. He similarly fails to testify that any such facts would exist and fails to offer any reason to question the evidence provided by Youngevity. Further, Andreoli does not explain how the unidentified facts he seeks will affect the motion for summary judgment. Instead, the undisputed evidence establishes that the Four

Distributorships are bound by Youngevity's Distributor Agreement. Andreoli thus failed to meet his burden and the Court should grant summary judgment for Youngevity. *See Family Home*, 525 F.3d at 827.

### C. The Proper Remedy Is Summary Judgment on the Distributor Claim Without a Stay

Andreoli also argues that, if this Court grants Youngevity's motion, the Court should compel arbitration. ECF No. 70 at 6. Youngevity does not disagree. This Court should issue an order similar to the one this Court recently issued in the related case. *See Youngevity Inter. Corp. v. Smith*, Case No. 3:16-cv-704, 2018 WL 3458390, at *3 (S.D. Cal. July 18, 2018) (ordering the claimants to "proceed to arbitration in accordance with the terms of the arbitration agreements"). Through a similar order, Andreoli will be able to raise his Distributor Claim in arbitration.

Andreoli misinterprets Youngevity's position when arguing that "Youngevity will resist Andreoli arbitrating this claim." *Id.* If the Court dismisses the Distributor Claim in favor of arbitration, Andreoli may pursue arbitration in accordance with the arbitration agreement. As the claimant, Andreoli bears the burden of initiating arbitration. *See* AMERICAN ARBITRATION ASSOCIATION, COMMERCIAL ARBITRATION RULES AND MEDIATION PROCEDURES R-4(A) (stating that "[a]rbtiration under an arbitration provision in a contract shall be initiated by the initiating party ('claimant'").[2]

Lastly, if this Court determines that Andreoli's Distributor Claim is subject to arbitration, it should not stay the remainder of this lawsuit pending arbitration. "Where both arbitrable and non-arbitrable claims are before a court, the non-arbitrable claims should be stayed only when 'the arbitrable claims predominate, or where the outcome of non-arbitrable claims will depend upon the arbitrator's decision.'" *Exari Sys. Inc. v. Amazon Corp. LLC*, No. C15-356, 2015 WL 4164834, at *3 (W.D. Wash. July 9, 2015) (quoting *United Comm. Hub, Inc. v. Qwest Comm., Inc.*, 46 Fed. Appx 412, 415 (9th Cir. 2002)). Moreover, "when feasible, it is preferable to proceed with litigation of the non[-

---

[2] *Available at* https://www.adr.org/sites/default/files/CommercialRules_Web.pdf (last visited Aug. 29, 2018).

]arbitrable claims." *JNK Entm't v. SP Sales & Entm't*, No. 15-cv-01908, 2015 WL 13283845, at *5 (C.D. Cal. Sept. 2, 2015) (citing *United Communications*, 46 Fed. Appx at 415).

Here, the Distributor Claim does not predominate over non-arbitrable claims. The Distributor Claim is but one third of one distinct cause of action in this lawsuit, out of eleven operative causes of action. *See* ECF Nos. 22, 25, 45. Further, the only issue under the Distributor Claim is whether Andreoli or Youngevity violated the Distributor Agreement. Andreoli includes his allegations relating to the Distributor Claim in unique sections in his operative complaint. ECF No. 22 at ¶¶ 84–101, 130–139. The facts and legal doctrine applicable to that narrow claim do not overlap any other claim in the case. An arbitration would have no effect on the remaining claims, and would not touch on any common factual issues. Any conclusions the arbitrator may make regarding the Distributor Claim are severable from the other issues in this lawsuit, which relate to Andreoli's role as Youngevity's President (ECF No. 22 at ¶¶ 67–69, 102–113; ECF No. 25 at ¶¶ 23–27), Andreoli's sale of the Financial Destination entities to Youngevity (ECF No. 22 at ¶¶ 17–29), Andreoli's Amended and Restated Purchase Agreement (ECF No. 22 at ¶¶ 30–66, 70–83; ECF No. 25 at ¶¶ 14–18, 36–37), and Andreoli's involvement in Wakaya Perfection prior to June 1, 2016 while he was still employed as Youngevity's President (ECF No. 22 at ¶¶ 114–117; ECF No. 25 at ¶¶ 28–35). Similarly, the following issues are relevant to operative causes of action other than the Distributor Claim:

- Whether Andreoli committed the tort of fraud through his intentional misrepresentations of the circumstances surrounding his departure from Youngevity, and surrounding FDI's relationship with New Benefits (ECF No. 25 at ¶¶ 55–81);
- Whether then Youngevity President Andreoli breached his Amended and Restated Purchase Agreement with Youngevity by assisting Todd Smith with his attempt to purchase MXI Corp. to compete with Youngevity, and then aiding Todd Smith in the purchase of Wakaya Perfection (ECF No. 25 at ¶¶ 82–87);
- Whether Andreoli committed the tort of intentional interference with prospective economic advantage by failing, as President of Youngevity, to report the Wakaya Perfection opportunity to Youngevity (ECF No. 25 at ¶¶ 88–100);

- Whether Andreoli breached his duty of loyalty to Youngevity by developing Wakaya Perfection while still employed at Youngevity (ECF No. 25 at ¶¶ 114–118);

- Whether Andreoli or Youngevity committed the tort of conversion by keeping various property (ECF No. 22 at ¶¶ 214–218; ECF No. 25 at ¶¶ 119–122);

- Whether Youngevity breached various agreements (other than the Distributor Agreement) with Andreoli (ECF No. 22 at ¶¶ 122–129, 140–157);

- Whether Youngevity violated California's Unfair Competition Law (ECF No. 22 at ¶¶ 219–238).

In sum, the Distributor Claim does not predominate over the remaining non-arbitrable claims in this lawsuit.

In support of his request for a stay, Andreoli states only that "deposition and document discovery regarding the parties will include date ranges and subjects that pertain to communications and actions of the parties that are the same, and an outcome that Youngevity has violated the Distributor Agreements could pertain to Andreoli' claim of unfair competition." ECF No. 70 at 7. That conclusory sentence fails to support the conclusion that the Distributor Claim "predominates" over the rest of this lawsuit or that "the outcome of non-arbitrable claims will depend upon the arbitrator's decision." *Exari Systems*, 2015 WL 4164834 at *3. Andreoli has not supported his conclusory position with any factual recitals. Therefore, this Court has no basis to stay this action pending arbitration of the Distributor Claim.

### III.  CONCLUSION

The undisputed facts prove the Four Distributorships bound by Youngevity's Distributor Agreement which contains a mandatory arbitration clause requiring Andreoli to arbitrate his Distributor Claim. The Court should thus grant Youngevity summary judgment on the Distributor Claim and permit Andreoli to bring his claim in arbitration. Moreover, because the Distributor Claim does not predominate over the rest of the suit and because the sole issue related to the Distributor Claim is unique, this Court should not stay the suit pending arbitration.

1  DATED: August 30, 2018.

Respectfully submitted

EMORD & ASSOCIATES, P.C.

BY:  s/ Eric J. Awerbuch
     Attorney for Plaintiffs/Counter-Defendants
     E-mail: eawerbuch@emord.com