UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| William Andreoli,<br><br>          Plaintiff,<br><br>v.<br><br>Youngevity International, Inc., et al.,<br><br>          Defendants. | Case No.: 16-cv-02922-BTM-JLB<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION TO COMPEL**<br><br>**[ECF No. 107]** |

Presently before the Court is Defendants' Motion to Compel (ECF No. 107). Defendants seek: (1) an order compelling Plaintiff to provided verified discovery responses to Defendants' Second Set of Requests for Production of Documents ("RFPs"); (2) an order compelling Plaintiff to produce all documents responsive to the RFPs; and (3) an award of fees and expenses incurred from submitting this motion. (*Id.* at 2.) For the reasons stated below, Defendants' Motion to Compel is **GRANTED in part and DENIED WITHOUT PREJUDICE in part**.

**I. BACKGROUND**

**A. Factual Background**

On April 11, 2018, Plaintiff filed his First Amended Complaint ("FAC"). (ECF No. 22). The allegations in Plaintiff's FAC are summarized as follows: In August 2011,

Defendant Youngevity International, Inc. ("Youngevity") purchased a series of companies, FDI entities,[1] from Plaintiff. (*Id.* ¶¶ 20–22.) The parties executed a purchase agreement in which Plaintiff agreed to sell all of his ownership interests in the FDI entities to Youngevity. (*Id.* ¶ 22.) A few months later, in October 2011, the parties executed the Amended and Restated Equity Purchase Agreement that superseded the original purchase agreement. (*Id.* ¶ 23.) The Amended Purchase Agreement contained a set of payment terms that commenced on October 25, 2011. (*Id.* ¶ 30.) In acquiring the FDI entities, Youngevity also assumed one of the FDI entities' mortgage obligations, which as of December 31, 2014, was approximately $1,986,000. (*Id.* ¶ 26.) The property, owned by FDIR, was a commercial building in Windham, New Hampshire that was occupied by FDI. (*Id.* ¶ 45.) The Amended Purchase Agreement "provided for a separate closing date" for the property because Defendants "were not able to finance the property until a later date." (*Id.* ¶ 46.) "However, Defendants agreed to pay the rent and monthly expenses" until the deal closed. (*Id.* ¶ 47.) Immediately after the acquisition, Youngevity's Board of Directors appointed Plaintiff as Youngevity's president. (*Id.* ¶ 28.) Plaintiff remained as Youngevity's president until November 30, 2015. (*Id.* ¶ 29.)

In 2014, while Plaintiff remained employed by Youngevity, Defendants allegedly coerced Plaintiff into signing the First Amendment to the Amended Purchase Agreement,[2] which changed the previous acquisition purchase price and payment terms from $20,000,000 to $6,000,000. (*Id.* ¶¶ 36–43.) Plaintiff also claims that Defendants refused to close on the FDIR transaction and only paid rent and related expenses until December 2015, leaving Plaintiff with the "burden and costs of running the FDIR operation." (*Id.* ¶

---

[1] FDI entities consisted of the following companies: Financial Destination, Inc., a New Hampshire corporation ("FDI"); FDI Management, Inc., a New Hampshire corporation ("FDIM"); FDI Realty, LLC, a New Hampshire limited liability company ("FDIR"); and MoneyTRAX, LLC, a New Hampshire limited liability company ("MoneyTRAX"). (ECF No. 22 ¶ 18.)

[2] The Amended and Restated Equity Purchase Agreement and First Amendment to the Amended and Restated Equity Purchase Agreement are the effective and final purchase agreements at issue in this action (collectively, "Amended Purchase Agreements"). (ECF No. 22 ¶ 24.)

58.) Additionally, Plaintiff alleges that Defendants coerced him into resigning on November 30, 2015. (*Id.* ¶ 67.) Since February 2016, Defendants have defaulted on their obligations under the Amended Purchase Agreements and have stopped making commission payments for Plaintiff's distributorships, which Defendants terminated on March 17, 2016. (*Id.* ¶¶ 82, 95–99.)

Plaintiff alleges four causes of action in his FAC: (1) Breach of Contract; (2) Breach of Employment Contract; (3) Conversion; and (4) Violations of California's Unfair Competitions Laws. (*Id.* ¶¶ 118–238.)

On April 24, 2018, Defendants filed nine counterclaims against Plaintiff.[3] (ECF No. 25). Defendants' counterclaims allege the following: Around 2011, Youngevity and Plaintiff entered into negotiations to acquire Plaintiff's companies, which "were struggling financially." (*Id.* ¶ 13.) In October 2011, the Parties executed the Amended and Restated Equity Purchase Agreement, in which Youngevity would acquire the assets of each of Plaintiff's companies except FDIR, until completion of a separate set of conditions precedent. (*Id.* ¶¶ 14–15.) Defendants claim that the conditions precedent were never met, so Youngevity "never acquired FDIR's assets." (*Id.* ¶ 15.)

Also in October 2011, Plaintiff and Youngevity entered into an Employment Agreement, which made Plaintiff Youngevity's president. (*Id.* ¶ 18.) While serving as president, Plaintiff allegedly "controlled four Youngevity distributor accounts without Youngevity's knowledge" or permission and "force qualif[ied]" the accounts. (*Id.* ¶ 22–23.) Further, Defendants claim that Plaintiff allowed other businesses to operate out of Youngevity's New Hampshire office, which Plaintiff maintained ownership of and control over. (*Id.* ¶¶ 24–25.)

Defendants also allege that beginning in July 2015 and thereafter, Plaintiff coordinated with top level Youngevity executives and distributors to form a competing

---

[3] The Honorable Barry T. Moskowitz dismissed Defendants' first and seventh causes of action in its counterclaim on June 21, 2018. (ECF No. 45.)

company, Wakaya Perfection LP (subsequently Wakaya Perfection LLC), without informing Defendants. (*See id.* ¶¶ 28–32.) On November 9, 2015, Plaintiff "was given access to Wakaya's internal communication system known as 'BaseCamp,'" which he accessed with the name "General Box." (*Id.* ¶ 33.) Defendants contend that Plaintiff "had been assisting with Wakaya's formation and transition to [a] Youngevity [c]ompetitor since July 2015," and on June 1, 2016, Wakaya named Plaintiff as its president. (*Id.* ¶¶ 39–40.)

On October 28, 2015, Plaintiff informed Youngevity's chief executive officer that he would be resigning as Youngevity's president on November 30, 2015. (*Id.* ¶ 36.) In an e-mail memorializing his resignation, Plaintiff "pledged that he would 'honor the six month non-compete [clause] as set forth in the "Amended and Restated Equity Purchase Agreement" and the "Employment Agreement."'" (*Id.* ¶ 36.) Relying on Plaintiff's statement, Youngevity paid Plaintiff approximately $295,926.42, and his employment ended on November 30, 2015. (*Id.* ¶¶ 36–37.) Youngevity has paid Plaintiff more than $6,000,000.00 in total. (*Id.* ¶ 37.)

Finally, in December 2015, Defendants allege that Youngevity employees visited the New Hampshire office in an effort to close the office and collect Youngevity's property, including furniture. (*Id.* ¶ 38.) Defendants claim that Plaintiff forbade the employees from taking the furniture. (*Id.*)

Defendants and Counterclaimants allege seven causes of action: (1) Fraud – Intentional Misrepresentation (Related to Plaintiff's Departure from Youngevity); (2) Fraud – Intentional Misrepresentation (Related to Plaintiff's Representations of a Relationship with Company New Benefits); (3) Intentional Interference with Existing Economic Relations; (4) Breach of Contract; (5) Intentional Interference with Prospective Economic Advantage; (6) Breach of Duty of Loyalty; (7) Conversion.

**B. Procedural Background Regarding Discovery Dispute**

Defendants served Plaintiff with the RFPs at issue on August 9, 2018. (ECF No. 107-2 at 11.) Plaintiff did not file timely written responses and objections to Defendants' RFPs. (ECF No. 107 at 4.)

On September 24, 2018, the parties telephonically met and conferred regarding Plaintiff's failure to file a response and the parties' positions on Plaintiff's discovery obligations. (ECF No. 107 at 4–5.) On September 25, 2018, Plaintiff's counsel sent an e-mail confirming the documents Plaintiff was and was not intending to produce. (ECF Nos. 107 at 5; 107-2 at 4.) On September 26, 2018, Plaintiff, standing by the objections he communicated in the September 24, 2018 call and the September 25, 2018 e-mail, produced some, but not all, responsive documents. (ECF No. 107 at 5.) Plaintiff has never served a formal discovery response to the RFPs. (*Id.* at 4.)

Defendants filed this Motion to Compel on October 22, 2018. (ECF No. 107.) Plaintiff filed an opposition on October 31, 2018. (ECF No. 110.) The Court held a hearing on the motion on November 27, 2018. (ECF No. 118.)

## II. DISCUSSION

### A. Legal Standard

Nonprivileged information is discoverable under Federal Rule of Civil Procedure 26 if it is (1) relevant, and (2) proportional to the needs of the case. Rule 26(b)(1) provides that parties—

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Federal Rule of Civil Procedure 34 further provides that a party may serve requests for documents or tangible things on any other party that relate to any matter within the scope of discovery defined in Rule 26(b). Fed. R. Civ. P. 34(a). The propounding party may move to compel a response if a party fails to produce documents requested under Rule 34. *See* Fed. R. Civ. P. 37(a). "The party seeking to compel discovery has the burden of

establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining[,] or supporting its objections." *Bryant v. Ochoa*, No. 07cv200 JM (PCL), 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) (internal citations omitted) (first citing *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995); then citing *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002)). Those opposing discovery are "required to carry a heavy burden of showing" why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

**B. Adequacy of Plaintiff's Discovery Response**

Defendants argue that Plaintiff was required to respond to the RFPs at issue by September 10, 2018, and failed to do so in any manner within that time period. (ECF No. 107 at 4.) Defendants attach to their motion Plaintiff's September 25, 2018 e-mail from Plaintiff's counsel Joseph Pia which reads, in full:

> Josh,
>
> Per our discussion yesterday, please see below:
>
> **Doc Reqs Nos. 257-262.** Andreoli made a production on August 20, 2018. Documents within Andreoli's possession and control were included in that production responsive to 257 and 262. Additional documents have been made available to us and will be produced in response to these requests. It is our goal to include them in a planned production on Sept. 27th.
>
> **Doc Reqs Nos. 263-267.** The request numbers 263-267 are Wakaya documents and should be obtained through them.
>
> **Doc Reqs Nos. 268-270.** For the time period up to and including May 31, 2016, Andreoli is not aware of any responsive documents. Andreoli was paid as an employee of Wakaya beginning on June 1, 2016. To the extent that Youngevity is requesting documents beginning June 1, 2016, Andreoli opposes this request on the basis of Rule 26(b)(1) that all requests must be relevant and proportional.

(ECF No. 107-2 at 4.)  Defendants argue that Plaintiff has waived any objections by failing to serve anything that qualifies as written responses and objections, much less timely ones. (ECF No. 107 at 4–5.)

Plaintiff responds that Plaintiff filed a written response in the form of the September 25 e-mail and acknowledges that he "did not provide any other written responses." (ECF No. 110 at 3.)  In defending the e-mail response, Plaintiff further argues, "Written responses were clearly and concisely provided, admittedly in abbreviated form, but sufficient to comply with the requests and to permit Defendants to determine what was being produced and what was not, long before this motion was filed." (*Id.* at 6.)

Pursuant to Rule 34, the party to whom a request for production of documents is directed must ordinarily "respond in writing within 30 days after being served."  Fed. R. Civ. P. 34(b)(2).  The requirements for such a response are set forth in Rule 26. Specifically, Rule 26(g)(1) requires every discovery response or objection to be "signed by at least one attorney of record in the attorney's own name . . . and must state the signer's address, e-mail address, and telephone number."  Subsection (g)(1) of the Rule goes on to state:

> By signing, an attorney . . . certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:
>     . . .
>     (B) with respect to a discovery . . . response, or objection, it is:
>         (i) consistent with these rules and warranted by existing law . . . ;
>         [and]
>         (ii) not interposed for any improper purpose . . . .

Fed. R. Civ. P. 26(g)(1).

Plaintiff's e-mail was not signed by an attorney of record and did not state the signer's address, e-mail address, and telephone number.  Because Plaintiff's counsel did not sign it, counsel, arguably, did not certify to the best of his knowledge, information, and belief formed after a reasonable inquiry that his responses and objections were consistent with the Federal Rules of Civil Procedure and existing law and were not intended for any

improper purpose. Plaintiff's e-mail does not constitute an appropriate and legally sufficient response to the discovery propounded by Defendants.

**C. Requests for Production Nos. 257–262**

Defendants move to compel Plaintiff to produce all documents responsive to RFPs 257–262, which "seek documents related to contractual agreements between New Benefits and FDI, Youngevity, or Wakaya." (ECF No. 107 at 2.) With respect to these documents, Plaintiff argues that he searched for documents containing "New" within two words of "Benefits" and/or the term "NewBenefits." (ECF No. 110 at 3.) Plaintiff further asserts that Defendants refused to participate in the selection of appropriate search terms. (*Id.* at 4.) At the hearing on this motion, Plaintiff's counsel acknowledged that there were documents provided by Defendants that appear to be documents that would have been in Plaintiff's possession and that should have been identified with the described document search. Counsel was unable to explain why certain documents were not captured by the search. Plaintiff further argued at oral argument that Defendants have failed to meet their initial burden of showing the relevancy of documents dated after the end of 2016, by which time New Benefits had cancelled its contract(s).

The Court indicated at the hearing that it was not persuaded that any documents responsive to RFPs 257–262 dated after the end of 2016 would have relevance. The parties agreed to meet and confer further on whether or not Plaintiff should conduct a further search for additional documents and, if so, using what search terms. (*See* ECF No. 118.)

On November 30, 2018, the parties provided the Court with a joint supplemental statement indicating that they had agreed to search terms for a supplemental search to be conducted by Plaintiff with a relevant time period of January 1, 2014 and December 31, 2016, and with a supplemental production deadline of December 7, 2018. (ECF No. 119 at 2.) Therefore, as to RFPs 257–262, Defendants' Motion to Compel is **DENIED WITHOUT PREJUDICE**.

///

///

### D. Requests for Production Nos. 263–267

At the hearing on this motion, the parties represented to the Court that Defendants have withdrawn RFPs 263–267. Therefore, Defendants' Motion to Compel as to these RFPs is **DENIED AS MOOT**.

### E. Requests for Production Nos. 268–270

Lastly, Defendants move to compel Plaintiff to produce all documents responsive to RFPs 268–270, which "seek information related to Andreoli's compensation from Wakaya Perfection." (ECF No. 107 at 3.) Defendants argue that this evidence is relevant to Youngevity's Fourth Affirmative Defense of failure to mitigate damages and to dispute the alleged damages claimed by Plaintiff flowing from Youngevity's alleged failure to make monthly payments to Plaintiff under the Amended and Restated Equity Purchase Agreement. (*Id.*) Specifically, Defendants argue that Plaintiff was no longer entitled to receive payments under the Amended and Restated Equity Purchase Agreement once he began competing employment. (*Id.*) Plaintiff opposes production, arguing that the documents are irrelevant because: (1) Plaintiff's claim is not subject to mitigation; and (2) Defendants' position that Plaintiff's operation of a competing business voids the distributorships is without merit under California law and will be the subject of a motion for summary judgment. (ECF No. 110 at 5.)

Courts have "well established that when a party fails to respond completely to a request for production, any potential objections to that request are waived." *Cal. Sportfishing Protection All.*, No. 2:10–cv–1207–GEB–AC, 2014 WL 5093398, at *4 (E.D. Cal. Oct. 9, 2014). However, the party seeking to compel discovery has the initial burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). *Bryant*, 2009 WL 1390794, at *1.

Here, Defendants have met their burden to show the relevancy and proportionality of the requested discovery. Defendants' Motion to Compel responses to RFPs 268–270 is **GRANTED**. Accordingly, Plaintiff shall produce all documents responsive to RFPs 268–270 on or before **December 21, 2018**.

### F. Motion to Compel Verified Response

The Court is not persuaded that compelling Plaintiff to provide a verified response to Defendants' RFPs is warranted. However, Plaintiff is ordered to file a formal response to these RFPs by **December 7, 2018**.

## IV. AWARD OF REASONABLE EXPENSES

Rule 37(a)(5)(A) provides that if a motion to compel is granted, "the court must, after giving opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). However, "the court must not order this payment if (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Id.*

Although Defendants ultimately withdrew some of the requests upon which this Motion to Compel was based, Defendants prevailed as to the remainder of the requests. Furthermore, Plaintiff has offered no justification for its failure to provide formal written discovery responses to this discovery, even after being asked multiple times by Defendants to do so.

Accordingly, Defendants' request for reasonable expenses, including attorneys' fees, incurred from filing this Motion to Compel is **GRANTED**.

## V. CONCLUSION

For the reasons set forth above, Defendants' Motion to Compel (ECF No. 107) is **GRANTED in part and DENIED WITHOUT PREJUDICE in part**. Plaintiff shall reimburse Defendants for the reasonable expenses, including attorneys' fees, associated with bringing this motion.

On or before **January 7, 2019**, Defendants shall provide Plaintiff with a detailed fee and cost invoice(s) supporting the amount of reasonable attorneys' fees and costs incurred

by Defendants.  The parties shall promptly and thoroughly, and no later than **January 21, 2019**, meet and confer over any disputed fees and costs incurred by Defendants.  If the parties are able to resolve any disputes with respect to the amount of reasonable attorneys' fees and costs, Plaintiff is to pay that amount no later than **February 4, 2019**.  If the parties are unable to resolve their dispute(s) through the meet and confer process, then Defendants are granted leave to file, on or before **February 4, 2019**, an *ex parte* motion supported by sufficient evidence in support of the amount of reasonable fees or costs owed by Plaintiff to Defendants in connection with this motion.  The deadline for Plaintiff to file an opposition to Defendants' motion for fees and costs, if any, shall be **February 18, 2019**.

**IT IS SO ORDERED**.

Dated:  December 4, 2018

Hon. Jill L. Burkhardt
United States Magistrate Judge