UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| William Andreoli,<br><br>                                      Plaintiff,<br><br>v.<br><br>Youngevity International, Inc., et al.,<br><br>                                    Defendants. | Case No.:  16-cv-02922-BTM-JLB<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION TO COMPEL**<br><br><br><br>**[ECF No. 79]** |

Presently before the Court is Defendants' Motion to Compel (ECF No. 79). Defendants seek: (1) an order compelling Plaintiff to produce all documents responsive to Requests for Production Nos. 232–255 in Defendants' first set of document requests; and (2) an award of fees and expenses incurred from submitting this motion and from the meet and confer process.  For the reasons stated below, Defendants' Motion to Compel is **GRANTED**.

## I.    BACKGROUND

### A. Factual Background

On April 11, 2018, Plaintiff filed his First Amended Complaint ("FAC").  (ECF No. 22).  The allegations in Plaintiff's FAC are summarized as follows: In August 2011, Defendant Youngevity International, Inc. ("Youngevity") purchased a series of companies,

FDI entities,[1] from Plaintiff. (ECF No. 22 ¶¶ 20–22.) The parties executed a purchase agreement in which Plaintiff agreed to sell all of his ownership interests in the FDI entities to Youngevity. (*Id.* ¶ 22.) A few months later, in October 2011, the parties executed the Amended and Restated Equity Purchase Agreement that superseded the original purchase agreement. (*Id.* ¶ 23.) The Amended Purchase Agreement contained a set of payment terms that commenced on October 25, 2011. (*Id.* ¶ 30.) In acquiring the FDI entities, Youngevity also assumed one of the FDI entities' mortgage obligations, which as of December 31, 2014, was approximately $1,986,000. (*Id.* ¶ 26.) The property, owned by FDIR, was a commercial building in Windham, New Hampshire that was occupied by FDI. (*Id.* ¶ 45.) The Amended Purchase Agreement "provided for a separate closing date" for the property because Defendants "were not able to finance the property until a later date." (*Id.* ¶ 46.) "However, Defendants agreed to pay the rent and monthly expenses" until the deal closed. (*Id.* ¶ 47.) Immediately after the acquisition, Youngevity's Board of Directors appointed Plaintiff as Youngevity's president. (*Id.* ¶ 28.) Plaintiff remained as Youngevity's president until November 30, 2015. (*Id.* ¶ 29.)

In 2014, while Plaintiff remained employed by Youngevity, Defendants allegedly coerced Plaintiff into signing the First Amendment to the Amended Purchase Agreement,[2] which changed the previous acquisition purchase price and payment terms from $20,000,000 to $6,000,000. (*Id.* ¶¶ 36–43.) Plaintiff also claims that Defendants refused to close on the FDIR transaction and only paid rent and related expenses until December 2015, leaving Plaintiff with the "burden and costs of running the FDIR operation." (*Id.* ¶ 58.) Additionally, Plaintiff alleges that Defendants coerced him into resigning on

---

[1] FDI entities consisted of the following companies: Financial Destination, Inc., a New Hampshire corporation ("FDI"); FDI Management, Inc., a New Hampshire corporation ("FDIM"); FDI Realty, LLC, a New Hampshire limited liability company ("FDIR"); and MoneyTRAX, LLC, a New Hampshire limited liability company ("MoneyTRAX"). (ECF No. 22 ¶ 18.)

[2] The Amended and Restated Equity Purchase Agreement and First Amendment to the Amended and Restated Equity Purchase Agreement are the effective and final purchase agreements at issue in this action (collectively, "Amended Purchase Agreements"). (ECF No. 22 ¶ 24.)

November 30, 2015. (*Id.* ¶ 67.) Since February 2016, Defendants have defaulted on their obligations under the Amended Purchase Agreements and have stopped making commission payments for Plaintiffs' distributorships, which Defendants terminated on March 17, 2016. (*Id.* ¶¶ 82, 95–99.)

Plaintiff alleges four causes of action in his FAC: (1) Breach of Contract; (2) Breach of Employment Contract; (3) Conversion; and (4) Violations of California's Unfair Competitions Laws. (*Id.* ¶¶ 118–238.)

On April 24, 2018, Defendants filed nine counterclaims against Plaintiff.[3] (ECF No. 25). Defendants' counterclaims allege the following: Around 2011, Youngevity and Plaintiff entered into negotiations to acquire Plaintiff's companies, which "were struggling financially." (*Id.* ¶ 13.) In October 2011, the Parties executed the Amended and Restated Equity Purchase Agreement, in which Youngevity would acquire the assets of each of Plaintiff's companies except FDIR, until completion of a separate set of conditions precedent. (*Id.* ¶¶ 14–15.) Defendants claim that the conditions precedent were never met, so Youngevity "never acquired FDIR's assets." (*Id.* ¶ 15.)

Also in October 2011, Plaintiff and Youngevity entered into an Employment Agreement, which made Plaintiff Youngevity's president. (*Id.* ¶ 18.) While serving as president, Plaintiff allegedly "controlled four Youngevity distributor accounts without Youngevity's knowledge" or permission and "force qualif[ied]" the accounts. (*Id.* ¶ 22–23.) Further, Defendants claim that Plaintiff allowed other businesses to operate out of Youngevity's New Hampshire office, which Plaintiff maintained ownership of and control over. (*Id.* ¶¶ 24–25.)

Defendants also allege that beginning in July 2015 and thereafter, Plaintiff coordinated with top level Youngevity executives and distributors to form a competing company, Wakaya Perfection LP (subsequently Wakaya Perfection LLC), without

---

[3] The Honorable Barry T. Moskowitz dismissed Defendants' first and seventh causes of action in its counterclaim on June 21, 2018. (ECF No. 45.)

informing Defendants. (*See id.* ¶¶ 28–32.) On November 9, 2015, Plaintiff "was given access to Wakaya's internal communication system known as 'BaseCamp,'" which he accessed with the name "General Box." (*Id.* ¶ 33.) Defendants contend that Plaintiff "had been assisting with Wakaya's formation and transition to [a] Youngevity [c]ompetitor since July 2015," and on June 1, 2016, Wakaya named Plaintiff as its president. (*Id.* ¶¶ 39–40.)

On October 28, 2015, Plaintiff informed Youngevity's chief executive officer that he would be resigning as Youngevity's president on November 30, 2015. (*Id.* ¶ 36.) In an e-mail memorializing his resignation, Plaintiff "pledged that he would 'honor the six month non-compete [clause] as set forth in the "Amended and Restated Equity Purchase Agreement" and the "Employment Agreement."'" (*Id.* ¶ 36.) Relying on Plaintiff's statement, Youngevity paid Plaintiff approximately $295,926.42, and his employment ended on November 30, 2015. (*Id.* ¶¶ 36–37.) Youngevity has paid Plaintiff more than $6,000,000.00 in total. (*Id.* ¶ 37.)

Finally, in December 2015, Defendants allege that Youngevity employees visited the New Hampshire office in an effort to close the office and collect Youngevity property, including furniture. (*Id.* ¶ 38.) Defendants claim that Plaintiff forbade the employees from taking the furniture. (*Id.*)

Defendants and Counterclaimants allege seven causes of action: (1) Fraud – Intentional Misrepresentation (Related to Plaintiff's Departure from Youngevity); (2) Fraud – Intentional Misrepresentation (Related to Plaintiff's Representations of a Relationship with Company New Benefits); (3) Intentional Interference with Existing Economic Relations; (4) Breach of Contract; (5) Intentional Interference with Prospective Economic Advantage; (6) Breach of Duty of Loyalty; (7) Conversion.

**B. Procedural Background Regarding Discovery Dispute**

Defendants served Plaintiff with the Requests for Production ("RFPs") at issue on May 10, 2018. (ECF No. 79-1 ¶ 4.) On June 7, 2018, Plaintiff served written responses and objections to Defendants' RFPs but did not produce any documents. (*Id.* ¶¶ 5–6.) On June 22, 2018, the parties filed a joint motion to extend the meet and confer deadline in

16-cv-02922-BTM-JLB

which Plaintiff represented that he would produce responsive documents to Defendants' RFPs by July 11, 2018. (ECF No. 44 ¶ 3.) The Court granted the parties' joint motion and extended the meet and confer deadline to July 25, 2018. (ECF No. 48.) Defendant did not produce any documents by July 11, 2018. (ECF No. 79-1 ¶ 7.)

On July 13, 2018, the parties telephonically met and conferred regarding Plaintiff's lack of production, and Plaintiff represented that he would produce documents by July 20, 2018. (*Id.* ¶ 8.) Plaintiff produced 47,275 documents on July 20, 2018. (*Id.* ¶ 9.) However, the production was deficient, so the parties telephonically met and conferred again on July 23, 2018. (*Id.* ¶ 10.)

On July 27, 2018, the parties filed a second joint motion to extend the time to meet and confer in which Plaintiff stated that he "anticipat[ed] completing production of documents by August 10, 2018." (ECF No. 60 ¶ 8.) The Court granted the parties' joint motion and further extended the time to meet and confer to August 15, 2018. (ECF No. 61.) Plaintiff did not make a supplemental production by August 10, 2018, so the parties telephonically met and conferred on August 15, 2018. (ECF No. 79-1 ¶ 11.)

On August 15, 2018, the parties filed a third joint motion to extend the time to meet and confer in which Plaintiff stated that he would produce supplemental documents "later that day" on August 15. (ECF No. 64.) The Court granted the parties' joint motion and further extended the time to meet and confer to August 24, 2018. (ECF No. 67.) Plaintiff did not make a supplemental production by August 15, 2018, so the parties left a joint voicemail message with Judge Burkhardt's chambers requesting the Court's assistance with Plaintiff's deficient productions. (ECF Nos. 66, 79-1 ¶ 11.) The Court set a telephonic Discovery Conference for August 20, 2018. (ECF No. 66.)

During the August 20, 2018 Discovery Conference, Plaintiff produced 9,460 documents and "represented to [Defendants] and the Court that the document production" was complete and "contained responsive text messages." (ECF No. 79-1 ¶¶ 12–13.) After reviewing the supplemental production, Defendants determined that the production did not include responsive documents but instead included e-mails "between [Plaintiff] and his

5

attorney," e-mails "from dating websites," pictures of the "Twitter logo," and pictures of Plaintiff's family.  (*Id.* ¶ 13.)  On August 21, 2018, defense counsel e-mailed Plaintiff's counsel outlining their concerns with Plaintiff's August 20, 2018 supplemental production.  (ECF Nos. 79-1 ¶ 15; 79-2 at 40–41.)  Plaintiff's counsel responded to the e-mail on August 27, 2018, and "offer[ed] to provide a supplemental production on September 17, 2018," and "to meet and confer on August 31, 2018."  (ECF Nos. 79-1 ¶ 15; 79-2 at 43–44.)  Because the Court's August 16, 2018 Order gave the parties until August 27, 2018 to contact the Court for assistance, defense counsel requested "an immediate telephonic meet and confer."  (ECF Nos. 79-1 ¶ 15; 79-2 at 43.)

On August 27, 2018, the parties met and conferred telephonically and subsequently left a joint voicemail message with Judge Burkhardt's chambers requesting to schedule a second Discovery Conference with the Court.  (ECF Nos. 73; 79-1 ¶ 17.)  The Court held a Discovery Conference with the parties on September 4, 2018, and thereafter issued a briefing schedule for Defendants to file a motion to compel.  (ECF Nos. 74, 76.)

Defendants filed this Motion to Compel on September 12, 2018.  (ECF No. 79.)  Plaintiff filed an opposition on September 27, 2018.  (ECF No. 86.)  In the declaration of John P. Mertens attached to the opposition, Mr. Mertens provided that Plaintiff's counsel "was unable to access all documents necessary to respond to Defendants' discovery requests until September 26, 2018," and that "approximately 10,000 documents" were just made available to Plaintiff's counsel.  (ECF No. 86-1 ¶ 2.)  Mr. Mertens also provided that Plaintiff had made a supplemental production of "over 350 pages of documents" on September 26, 2018.  (*Id.* ¶¶ 5–6.)  Ultimately, Plaintiff represented that Plaintiff "will have produced" all non-privileged[4] responsive documents except 1) e-mails to or from Youngevity.com e-mail addresses already in the possession of Youngevity (withheld based

---

[4] Plaintiff literally states that he will have produced all "privileged" responsive documents, but this is presumed by the Court to be a typo.

upon undue burden) and 2) e-mails from June 1, 2016, to July 1, 2016 (withheld on the bases of relevance and undue burden).  (ECF No. 86 at 4.)

Defendants filed a reply to Plaintiff's opposition on October 3, 2018.  (ECF No. 91.) In the declaration of Eric J. Awerbuch attached to the reply, Mr. Awerbuch confirmed that Plaintiff had made supplemental productions on September 17, September 26, and September 29, 2018, of 386 documents, but the production was still deficient.  (ECF No. 91-1 ¶ 3.)

On October 5, 2018, Plaintiff filed a supplemental opposition stating that Plaintiff has since "made a full and complete production of all documents responsive to the Requests for Production upon which Defendants are seeking an order to compel" with the exception of "documents already in the possession of Defendants" and "irrelevant documents" "as specifically set forth in the initial Opposition."  (ECF No. 94 at 2.)

In response to Plaintiff's supplemental opposition, Defendants filed the supplemental declaration of Mr. Awerbuch on October 12, 2018.  (ECF No. 99.)  In his declaration, Mr. Awerbuch provided that Plaintiff had produced a supplemental production of 2,267 documents on October 4, 2018.  (ECF No. 99 ¶ 4.)  However, based on his review of the October 4, 2018 supplemental production and all of Plaintiff's productions in this case, Mr. Awerbuch found that: (1) Plaintiff has still not produced any documents responsive to RFPs 235 and 236; (2) Plaintiff's production with respect to RFPs 234 and 237–255 is still deficient.  (*Id.* ¶¶ 5–9.)

## II.  DISCUSSION

### A. Legal Standard

Nonprivileged information is discoverable under Federal Rule of Civil Procedure 26 if it is (1) relevant, and (2) proportional to the needs of the case.  Rule 26(b)(1) provides that parties—

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at

> stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Federal Rule of Civil Procedure 34 further provides that a party may serve requests for documents or tangible things on any other party that relate to any matter within the scope of discovery defined in Rule 26(b). Fed. R. Civ. P. 34(a). The propounding party may move to compel a response if a party fails to produce documents requested under Rule 34. *See* Fed. R. Civ. P. 37(a). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining[,] or supporting its objections." *Bryant v. Ochoa*, No. 07cv200 JM (PCL), 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) (internal citations omitted) (first citing *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995); then citing *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002)). Those opposing discovery are "required to carry a heavy burden of showing" why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

### B. Requests for Production Nos. 232 and 233

Defendants move to compel Plaintiff to produce all documents responsive to RFPs 232 and 233, which "seek documents related to Andreoli's property at 1 Industrial Dr., Windham, NH." (ECF No. 79 at 3–4.) RFPs 232 and 233 request the following:

> 232. Produce all lease agreements, rental agreements, contracts, and documents that relate or refer to the property at 1 Industrial Drive, Windham, New Hampshire.

> 233. Produce all documents that list the names of individuals, businesses, non-profits, or any other entity which used space

8

whether paid or not at the FDIR building located in Windham, New Hampshire which is at issue in this matter.

(ECF No. 79-2 at 18–19.)

Plaintiff's response to both requests is as follow:

To the extent this Request may call for communications between Plaintiff and counsel, such is objected to on the grounds of attorney–client privilege and/or attorney work product. To the extent that this Request seeks information which may be of a confidential, sensitive, and/or proprietary business nature, Plaintiff reserves the right to respond to this Request upon entry of a suitable, mutually-agreeable Protective Order. Plaintiff further objects as this Request is vague as to time.

Without waiving any objection or claim of privilege, Plaintiff responds as follows: Discovery is continuing and Plaintiff reserves the right to supplement and/or amend this Response as permitted by Fed. R. Civ. P. [26(e)].

(ECF No. 79-2 at 18–19.)

As detailed above, before Defendants filed their reply, Plaintiff made three supplemental productions totaling 386 documents. (ECF No. 91-1 ¶ 3.) With their reply, Defendants filed a declaration of Mr. Awerbuch, which states that despite the three supplemental productions, Plaintiff still has "not produce[d] any of his tax returns or any lease agreements or similar documents relating to the property at 1 Industrial Dr., Windham, NH." (*Id.* ¶ 13.) Plaintiff then filed a supplemental opposition, which claims that as of October 5, 2018, Plaintiff had "made a full and complete production of all documents responsive to the Requests for Production upon which Defendants are seeking an order to compel" with the exception of "documents already in the possession of Defendants" and "irrelevant documents" "as specifically set forth in the initial Opposition." (ECF No. 94 at 2.) Because documents responsive to RFPs 232 and 233 would not be included in the excepted documents "specifically set forth in the initial Opposition," Plaintiff is presumably representing that all non-privileged documents responsive to RFPs 232 and 233 have been produced.

///

In response to Plaintiff's supplemental opposition, Defendants filed a third declaration of Mr. Awerbuch, which confirms that Plaintiff made a supplemental production of 2,267 documents on October 4, 2018. (ECF No. 99 ¶ 4.)

Because Mr. Awerbuch's declaration does not state that Plaintiff's October 4, 4018 supplemental production is deficient with respect to RFPs 232 and 233, but specifically states that the production is deficient with respect to the other RFPs at issue, it may be that Plaintiff has produced all documents responsive to these two requests. However, to the extent that Plaintiff's October 4, 2018 production is deficient with respect to RFPs 232 and 233, the Court will address Plaintiff's objections.

When ruling on a motion to compel, courts in this district "generally consider[ ] only those objections that have been timely asserted in the initial response to the discovery request and that are subsequently reasserted and relied upon in response to the motion to compel." *SolarCity Corp. v. Doria*, No. 16cv3085-JAH (RBB), 2018 WL 467898, at *3 (S.D. Cal. Jan. 18, 2018) (quoting *Medina v. County of San Diego*, Civil No. 08cv1252 BAS (RBB), 2014 WL 4793026, at *8 (S.D. Cal. Sept. 25, 2014)); *accord The Sherwin-Williams Co. v. Earl Scheib of Cal., Inc.*, No. 12CV2646-JAH(JMA), 2013 WL 12073836, at *2 n.1 (S.D. Cal. Mar. 4, 2013). "If a party fails to continue to assert an objection in opposition to a motion to compel, courts deem the objection waived." *SolarCity Corp.*, 2018 WL 467898, at *3.

In his initial responses, Plaintiff objects to RFPs 232 and 233 based on: (1) attorney–client privilege and/or attorney work product; (2) entry of a protective order; and (3) vagueness as to time. (ECF No. 79-2 at 18–19.) The Court entered a protective order in this case on July 6, 2018. (ECF No. 53.) Plaintiff's objection on this basis is therefore moot. Additionally, Defendants do not seek attorney–client privileged documents. (ECF No. 89 at 8–9.) Finally, Plaintiff has not, in his opposition, relied on his objection of vagueness as to time, so this objection has been waived.

Accordingly, Defendants' Motion to Compel as to RFPs 232 and 233 is **GRANTED**. To the extent he has not done so, Plaintiff shall produce all non-privileged documents

responsive to RFPs 232 and 233 on or before **December 21, 2018**. By the same date, Plaintiff shall produce supplemental written responses to RFPs 232 and 233 confirming that all responsive documents have been produced.

**C. Requests for Production Nos. 235 and 236**

Defendants next move to compel Plaintiff to produce all documents responsive to RFPs 235 and 236, which "seek information related to Andreoli's income." (ECF No. 79 at 4.) RFPs 235 and 236 request the following:

> 235. Produce all YOUR personal tax returns, including 1099's, W-2's, Schedules from 2010 to the Present.
>
> 236. Produce all of YOUR business tax returns, including attachments from 2010 to the Present.

(ECF No. 79-2 at 9.) The term YOUR is defined as: "William Andreoli or any representative acting on [his] behalf." (*Id.* at 7.)

Plaintiff's response to both requests is as follows:

> To the extent that this Request seeks information which is of a private, confidential[,] and highly sensitive nature, and to the extent that entitlement of this information has not been demonstrated, Plaintiff reserves the right to respond to this Request upon entry of a suitable, mutually agreeable Protective Order, if at all.
>
> Without waiving any objection or claim or privilege, Plaintiff responds as follows: Discovery is continuing and Plaintiff reserves the right to supplement and/or amend this Response as permitted by Fed. R. Civ. P. [26(e)].

(ECF No. 79-2 at 20.)

As detailed above, Plaintiff made three supplemental productions totaling 386 documents before filing his opposition and an additional production of 2,267 documents after Defendants filed their reply. (ECF Nos. 91-1 ¶ 3; 99 ¶ 4.) However, despite all of the supplemental productions Plaintiff made during the briefing of this motion, Mr. Awerbuch's third and final declaration states that Plaintiff has still not produced any tax returns in response to RFPs 235 and 236. (ECF No. 99 ¶ 5.)

11

In his initial responses, Plaintiff's only objection to RFPs 235 and 236 is a reservation of the right to respond after entry of a protective order, which the Court entered on July 6, 2018.[5] (ECF No. 53.) The Court therefore finds that Plaintiff's objection on this basis is moot.

Because Plaintiff does not raise any other objections that apply to these RFPs, Defendants' Motion to Compel as to RFPs 235 and 236 is **GRANTED**. Accordingly, Plaintiff shall produce all documents responsive to RFPs 235 and 236 on or before **December 21, 2018**. By the same date, Plaintiff shall produce supplemental written responses to RFPs 235 and 236 confirming that all responsive documents have been produced.

**D. Requests for Production Nos. 234, 237–255**

Lastly, Defendants move to compel Plaintiff to produce all documents responsive to RFPs 234 and 237–255, which "seek communications or documents in [Plaintiff]'s possession and related to Wakaya or key Wakaya individuals." (ECF No. 79 at 8.) RFPs 234 and 237–238 request the following:[6]

> 234. Produce all documents, emails, notes, written correspondence to Defendants/Counterclaim Plaintiffs regarding the company previously called Wakaya Perfection LP.

> 237. Produce all communications YOU have received or sent, including but not limited to text messages, Facebook

---

[5] As with RFPs 232 and 233, Plaintiff does not object to RFPs 235 and 236 in his opposition, but rather states that Plaintiff was in the process of "produc[ing] all [non]privileged, responsive documents to RFP[s] 232–255" when Defendants' motion to compel was filed, and all responsive documents will be produced, "not subject to [his] three objections." (ECF No. 86 at 4.) However, none of the exceptions Plaintiff carved out in his opposition are applicable to RFPs 235 and 236.

[6] RFPs 239–255 are identical to RFP 238 except that in each subsequent RFP, the name Todd Smith is replaced with one of these names: Blake Graham, Mike Randolph, Mike Koliniski, Brytt Cloward, Patti Gardner, Dave Pitcock, Barb Pitcock, Andre Vaughn, Maxandra Desrosiers, Jimmy Hyun, Marin Barney, Jennifer Halliday, David Gilmour, David Roth, Jason Martin, Rachael Beet, and Michael Casperson. (ECF No. 79-9 at 9–11.)

messenger posts, emails, etc., between January 1, 2015 to July 1, 2016 regarding Wakaya Perfection.

238. Produce all communications between YOU and Todd Smith, including but not limited to text messages, Facebook messenger posts, emails, etc., between January 1, 2015 to July 1, 2016.

(ECF No. 79-2 at 9.) The term YOU is defined as: "William Andreoli or any representative acting on [his] behalf." (*Id.* at 7.)

Plaintiff's objections to RFP's 234 and 237 in his initial responses are essentially the same, in that Plaintiff objects to both requests based on: (1) attorney–client privilege and/or attorney work product; (2) Plaintiff's pending Motion to Dismiss Defendants' Counterclaims; and (3) entry of a protective order. (ECF No. 79-2 at 19–21.) Plaintiff likewise objects to RFPs 238–255 based on: (1) Plaintiff's pending Motion to Dismiss Defendants' Counterclaims; and (2) entry of a protective order. (ECF No. 79-2 at 21–32.)

Plaintiff does not reassert these three objections in his opposition or supplemental opposition but instead provides that he will produce all "[non]privileged, responsive documents" not subject to three exceptions mentioned above:

(1) E-mails to or from Youngevity.com accounts are already in Defendants' possession and are unduly burdensome to produce;

(2) E-mails from June 1, 2016 to July 1, 2016 are irrelevant to any parties' claim or defense; and

(3) E-mails from June 1, 2016 to July 1, 2016 are unduly burdensome to produce. (ECF No. 86 at 4.)

As detailed above, Plaintiff made four supplemental productions during the briefing of this motion. (*See* ECF Nos. 91-1 ¶ 3; 99 ¶ 4.) After making his last supplemental production, Plaintiff filed a supplemental opposition, stating that:

At this time, [Plaintiff] has made a full and complete production of all documents responsive to the Requests for Production upon

13

which Defendants are seeking an order to compel. [Plaintiff]'s search has included all text messages, Facebook Messenger messages, and e-mails, as well as the contents of [Plaintiff]'s computer hard drive. All responsive[,] non-privileged documents, except certain documents already in the possession of Defendants as specifically set forth in the initial Opposition, and irrelevant documents also as specifically set forth in the initial Opposition, have been produced.

(ECF No. 94 at 2.)

In response to Plaintiff's supplemental opposition, Defendants filed a third declaration of Mr. Awerbuch, which states that despite Plaintiff's October 4, 2018 supplemental production, Plaintiff has only produced "approximately 55 documents containing text messages." (ECF No. 99 ¶ 6.) Mr. Awerbuch's declaration further provides that Plaintiff has still not produced any text messages responsive to RFPs 238, 247, 240, 241, 244, and 246, responsive "communications to or from his "General Box" Basecamp account dated before June 1, 2016," and "responsive communications to or from his @comcast.net" account. (*Id.* ¶¶ 7–9.)

### i. Plaintiff's Objections in His Initial Responses

The Court turns first to the three objections Plaintiff raised in his initial responses to RFPs 234 and 237–255: (1) attorney–client privilege and/or attorney work product; (2) Plaintiff's pending Motion to Dismiss Defendants' Counterclaims; and (3) entry of a protective order. Because Plaintiff's Motion to Dismiss is no longer pending and the Court entered a protective order in this case on July 6, 2018 (ECF No. 53), the Court finds that Plaintiff's second and third objections are moot. As to the third objection, Defendants are "not seeking attorney–client communications." (ECF No. 79 at 10.)

### ii. Plaintiff's Objections in His Oppositions

The Court turns next to the three objections Plaintiff raises in his opposition and supplemental opposition, but does not raise in his initial responses. Courts have "well established that when a party fails to respond completely to a request for production, any potential objections to that request are waived." *Cal. Sportfishing Protection All.*, No.

2:10–cv–1207–GEB–AC, 2014 WL 5093398, at *4 (E.D. Cal. Oct. 9, 2014).  It follows then that when a party raises an objection to a request for production for the first time in an opposition to a motion to compel, that objection is waived, unless good cause exists to excuse the objection's untimeliness.  *See Na'im v. Sophie's Arms Fine Residences, LLC*, No. 13cv2515–JAH (BLM), 2014 WL 3537807, at *4 & n.3 (S.D. Cal. July 2, 2014); *Hinostroza v. Denny's Inc.*, No. 2:17–cv–02561–RFB–NJK, 2018 WL 3212014, at *5 (D. Nev. June 29, 2018) ("In response, Plaintiff objects to this request on the grounds that it is overbroad and unduly burdensome.  Plaintiff, however, did not raise these objections in her initial response to Defendant's [requests for production] and, therefore, the Court finds that she has waived these objections.").

### a. Responsive E-Mails to or from Youngevity.com Accounts

Plaintiff first argues that this Court should not compel him to produce responsive e-mails to or from Youngevity.com accounts because these e-mails are (1) already in Defendants' possession, "as they exist on their servers," and (2) unduly burdensome to produce.  (ECF No. 86 at 4.)  Defendants in reply identify certain categories of documents, including e-mails to or from Plaintiff's "General Box" and "@comcast.net" accounts, which have not been produced, contradicting Plaintiff's claims about the completeness of the production to date.  (ECF No. 91 at 3.)

As an initial matter, the Court finds Plaintiff's objection to producing e-mails to or from Youngevity.com accounts because they already in Defendants' possession is without merit, for a party "is required to produce documents he has in his possession, custody, or control, regardless of whether he believes [the opposing party] already has those documents."  *The Walt Disney Co. v. DeFabiis*, 168 F.R.D. 281, 284 (C.D. Cal. 1996).  Further, because Plaintiff did not raise an objection of undue burden in his initial responses, Plaintiff waives this objection unless good cause exists for his untimeliness in asserting it.  *See Na'im*, 2014 WL 3537807, at *4 & n.3.

Plaintiff's opposition details how he was unable to "access all necessary documents until September 26, 2018," because of issues obtaining documents in possession of

Plaintiff's counsel in the related and concurrent case, *Youngevity International, Corp. v. Smith et al.*, 3:16-cv-00704-BTM-JLB (S.D. Cal.) ("Concurrent Case"), and issues with Plaintiff's document vendor. (ECF Nos. 86 at 2–3; 86-1 ¶¶ 2–3.) The Court finds that there was good cause for Plaintiff not to assert an undue burden objection in his initial responses because Plaintiff was not yet in possession of "all necessary documents" when responses were due. The Court, however, overrules Plaintiff's objection.

The burden is on the party objecting to discovery to show undue burden and cost. *Unisource Worldwide, Inc. v. Swope*, No. CV 13–02822–JEM, 2013 WL 12116382, at *2 (C.D. Cal. May 14, 2013). A party must base their objection "on specific facts, such as the numerosity of a particular type of document, to facilitate a meaningful evaluation of what may be considered relevant or an undue burden." *Tourgeman v. Collins Fin. Servs., Inc.*, Civil No. 08cv1392–JLS (NLS), 2010 WL 2181416, at *4 (S.D. Cal. May 25, 2010). Here, Plaintiff merely states that he will be reducing his burden "by excluding from review approximately 8,000 documents that were sent to or from a [Y]oungevity.com e[-]mail account or were sent from June 1, 2016 through July 1, 2016." (ECF No. 86 at 3.) From this statement, the Court cannot discern how many of the approximated 8,000 documents are e-mails sent to or from a Youngevity.com account. Further, Plaintiff does not explain why a review of approximately 8,000 documents would be *unduly* burdensome. The Court therefore finds Plaintiff's undue burden objection to be unsupported and therefore without merit, and thus, this objection is overruled. *See Unisource Worldwide, Inc.*, 2013 WL 12116382, at *2 (finding a party's undue burden objection "insufficient" when the party made "only a generalized burden argument" and "fail[ed] even to submit a declaration detailing why producing documents would be unduly burdensome").

### b. Relevancy of E-Mails Dated June 1, 2016 to July 1, 2016

In their opposition, Defendants argue that the communications requested in RFPs 237–255 between Plaintiff and Wakaya-related individuals from January 1, 2015 to July 1, 2016 are relevant to Plaintiff's First Cause of Action (breach of contract) and four of Defendants' counterclaims. (ECF No. 79 at 3.) Specifically, Defendants argue that

Plaintiff's right to receive payments under the Amended and Restated Purchase Agreement ceased when he "engaged in employment . . . in anyway competitive with Youngevity" or "provided material assistance to any other [p]erson in compete[tion] with Youngevity." (*Id.*) Further, Defendants' argue that their counterclaims seek damages from Plaintiff's alleged involvement with Wakaya, beginning as early as July 2015. (*Id.*)

Plaintiff in response argues that the Court should not compel him to produce responsive e-mails dated between June 1, 2016 to July 1, 2016, the last month of the requested timeframe, because such e-mails are irrelevant to any party's claim or defense. (ECF No. 86 at 4.)

As mentioned above, courts have "well established that when a party fails to respond completely to a request for production, any potential objections to that request are waived." *Cal. Sportfishing Protection All.*, 2014 WL 5093398, at *4. However, the party seeking to compel discovery has the initial burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). *Bryant*, 2009 WL 1390794, at *1. Here, the Court finds that Defendants have met their burden to show the relevancy of the discovery requests as drafted. Plaintiff has waived the right to object to producing the subset of those documents dated between June 1, 2016 to July 1, 2016 that he now asserts are irrelevant to the litigation. Even if the Court were to consider Plaintiff's relevancy objection to the e-mails during that one month period, the objection would be overruled.

### c. Burden of Producing E-Mails Dated June 1, 2016 to July 1, 2016

Finally, Plaintiff argues that it would be unduly burdensome to produce responsive e-mails dated between June 1, 2016 and July 1, 2016. Defendants do not address the merits of this objection in their reply.

Because Plaintiff did not raise an undue burden objection in his initial responses, Plaintiff waives this objection unless good cause exists for his untimeliness in asserting it. *See Na'im*, 2014 WL 3537807, at *4 & n.3. As analyzed above, the Court finds that there was good cause for Plaintiff not to assert this objection in his initial responses because he

did not yet have access to all responsive documents. However, the Court finds overrules Plaintiff's objection.

Again, Plaintiff merely states in his opposition that he will be reducing his burden "by excluding from review approximately 8,000 documents that were sent to or from a [Y]oungevity.com e[-]mail account or were sent from June 1, 2016 through July 1, 2016." (ECF No. 86 at 3.) From this statement, the Court cannot discern how many of the approximated 8,000 documents are e-mails sent from June 1, 2016 through July 1, 2016. Further, as addressed above, Plaintiff does not detail why a review of approximately 8,000 documents would be *unduly* burdensome. The Court therefore finds Plaintiff's undue burden objection to be unsupported and therefore without merit, and thus, this objection is overruled. *See Unisource Worldwide, Inc.*, 2013 WL 12116382, at *2.

### iii. Conclusion

Based on the foregoing, the Court **GRANTS** Defendants' Motion to Compel as to RFPs 234 and 237–255. Accordingly, Plaintiff shall produce all documents responsive to RFPs 234 and 237–255 on or before **January 4, 2019**. By the same date, Plaintiff shall produce supplemental responses to RFPs 234 and 237–255 confirming that all responsive documents have been produced. If Plaintiff cannot produce additional responsive documents, he shall provide the Court with a declaration under penalty of perjury describing the reasonable efforts he and his counsel undertook to locate responsive documents.

## IV. AWARD OF REASONABLE EXPENSES

### A. Reasonable Expenses Incurred from Filing the Motion to Compel

Rule 37(a)(5)(A) provides that if a motion to compel is granted, "the court must, after giving opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). However, "the court must not order this payment if (i) the movant filed the motion before attempting in good faith to obtain the disclosure or

discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Id.*

Defendants argue that they are entitled to recover the reasonable costs incurred from filing this Motion to Compel because Plaintiff's nondisclosure was not substantially justified. (ECF Nos. 79 at 10; 91 at 4.) Specifically, Defendants maintain that "[Plaintiff] cannot reasonably blame the failure to produce documents on his own counsel in the Concurrent Case" and that "many of the documents responsive to [Defendants'] RFPs in this case have not been obtained or produced in the Concurrent Case." (ECF No. 91 at 4–5.)

Plaintiff contends that his delayed productions are "substantially justified, because despite his diligent efforts, the anticipated issues concerning coordination with counsel in the Concurrent Case, plus the issues encountered with the document vendor, have rendered it impossible to comply with production deadlines." (ECF No. 86 at 4.)

The Court is sympathetic to Plaintiff's difficulties with his document vendor—but only to a point. As Defendants highlight, the Court granted Plaintiff three extensions to meet and confer and produce responsive documents before Defendants filed this motion. (ECF Nos. 48, 61, 67.) In support of each extension, Plaintiff represented that he would produce all responsive documents first by July 20, 2018 (ECF No. 44), then by August 10, 2018 (ECF No. 60), and then by August 15, 2018 (ECF No. 67). Plaintiff failed to meet any of his self-imposed deadlines. Moreover, Plaintiff's supplemental opposition claims that as of October 5, 2018, Plaintiff "has made a full and complete production of all documents" not subject to his three new objections. (ECF No. 94 at 2.) However, Plaintiff has not produced any documents responsive to RFPs 235 and 236, and he does not object to these requests in his oppositions. (ECF No. 99 ¶ 5.) Given that Plaintiff's supplemental opposition misleadingly claims that he has made a full production of all responsive documents, when in fact he has not, the Court finds that Plaintiff is not substantially justified in his delayed and incomplete supplemental productions.

Accordingly, Defendants' request for reasonable expenses, including attorneys' fees, incurred from filing this Motion to Compel is **GRANTED**.

### B. Reasonable Expenses Incurred from Meet and Confer Efforts

Defendants also argue that Rule 37(a)(5) gives the Court discretion, in limited circumstances, to award attorneys' fees incurred from meeting and conferring on a motion to compel. (ECF Nos. 79 at 10; 91 at 5.) Defendants predominately rely on *Matlink, Inc. v. Home Depot USA, Inc.*, No. 07cv1991–DMS (BLM), 2008 WL 8504767 (S.D. Cal. Oct. 27, 2018) for this proposition.[7] (ECF Nos. 79 at 10–11; 91 at 5.)

Plaintiff contends that Defendants' reliance on *Matlink* is misplaced, and the "standing rule" in this District is that "meet and confer expenses are not recoverable." (ECF No. 86 at 11–12.) The Court agrees with Plaintiff and finds that the reasoning set forth in *Matlink* is inapplicable here. In *Matlink*, the court found that "Plaintiffs' dilatory actions in response to Defendants' discovery requests justified" sanctions under Rule 37(a)(5) because "Plaintiffs repeatedly stonewalled Defendants' efforts to meet and confer." 2008 WL 8504767, at *1. Here, there is no evidence that Plaintiff has intentionally delayed production of responsive documents, nor has Plaintiff evaded Defendants' requests to meet and confer. Although other district courts in the Ninth Circuit have found meet and confer efforts compensable under Rule 37(a)(5) in limited circumstances, the Court in its discretion declines to award those fees here.

### V. CONCLUSION

For the reasons set forth above, Defendants' Motion to Compel (ECF No. 79) is **GRANTED**. Plaintiff shall reimburse Defendants for the reasonable expenses, including attorneys' fees, associated with bringing this motion.

///

---

[7] Defendants also cite to *Aevoe Corp. v. AE Tech Co.*, No. 2:12–cv–00053–GMN–NJK, 2013 WL 5324787, at *6 n.12 (D. Nev. Sept. 20, 2013) and *Subramanian v. QAD Inc.*, No. C 06-3050 VRW, 2008 WL 11387036, at *2 (N.D. Cal. Nov. 20, 2008) for the proposition that meet and confer efforts are compensable under Rule 37(a)(5). (ECF No. 79 at 11.)

On or before **January 7, 2019**, Defendants shall provide Plaintiff with a detailed fee and cost invoice(s) supporting the amount of reasonable attorneys' fees and costs incurred by Defendants.  The parties shall promptly and thoroughly, and no later than **January 21, 2019**, meet and confer over any disputed fees and costs incurred by Defendants.  If the parties are able to resolve any disputes with respect to the amount of reasonable attorneys' fees and costs, Plaintiff is to pay that amount no later than **February 4, 2019**.  If the parties are unable to resolve their dispute(s) through the meet and confer process, then Defendants are granted leave to file, on or before **February 4, 2019**, an *ex parte* motion supported by sufficient evidence in support of the amount of reasonable fees or costs owed by Plaintiff to Defendants in connection with this motion.  The deadline for Plaintiff to file an opposition to Defendants' motion for fees and costs, if any, shall be **February 18, 2019**.

**IT IS SO ORDERED**.

Dated:  December 5, 2018

_Jill Burkhardt_
Hon. Jill L. Burkhardt
United States Magistrate Judge

16-cv-02922-BTM-JLB