UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| William Andreoli,<br><br>                           Plaintiff,<br><br>v.<br><br>Youngevity International, Inc., et al.,<br><br>                          Defendants. | Case No.: 16-cv-02922-BTM-JLB<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION TO REOPEN DISCOVERY**<br><br><br><br>**[ECF No. 152]** |

Before the Court is Defendants' motion to reopen discovery for the limited purpose of serving a subpoena on Verizon Wireless, Plaintiff's cell phone carrier. (ECF No. 152.) Plaintiff opposes the motion. (ECF No. 156.) For the reasons set forth below, Defendants' motion is **GRANTED**.

## I.    PROCEDURAL BACKGROUND

On May 10, 2018, Defendants served their first set of document requests on Plaintiff, which included, *inter alia*, Requests for Production ("RFP") Nos. 237–255. (ECF Nos. 79-1 ¶ 4; 79-2 at 9–11.) These RFPs seek communications, including text messages, between Plaintiff and eighteen "key Wakaya individuals" between January 1, 2015, and July 1, 2016. (ECF Nos. 79 at 8; 79-2 at 9–11.) Plaintiff served written responses and objections

to these RFPs on June 7, 2018, but did not produce any documents. (ECF No. 79-1 ¶¶ 5–6.) After three extensions of the parties' meet and confer deadline (ECF Nos. 48, 61, 67) and two telephonic Discovery Conferences with the Court (ECF Nos. 69, 74), Defendants filed a Motion to Compel (ECF No. 79).[1]  On December 5, 2018, the Court granted Defendants' Motion to Compel, requiring Plaintiff to produce, *inter alia*, all documents responsive to RFPs Nos. 237–255 on or before January 4, 2019. (ECF No. 121 at 18.) Discovery then closed in this case, with one limited exception,[2] on December 28, 2018. (ECF No. 126.)

Pursuant to the Court's Order, Plaintiff produced a supplemental production of 17,647 documents on January 4, 2019. (ECF No. 152-2 ¶ 4.) However, Defendants were unable "to locate any text messages in that production," so Defendants' counsel Eric Awerbuch e-mailed Plaintiff's counsel Jonathan Schofield with his concerns on January 9, 2019. (*Id.* ¶ 12; ECF No. 152-3 at 73.) Mr. Schofield responded the same day stating he "believe[d] that all responsive text messages have been produced." (ECF No. 152-3 at 72.) In response, Mr. Awerbuch suggested that either Plaintiff obtain his text message logs from Verizon Wireless ("Verizon") or the parties' file a joint motion for leave to subpoena Verizon. (*Id.* at 71.) Plaintiff opposed issuing a subpoena to Verizon but agreed to "work further with [his] vendor to double check that all texts were produced in order to alleviate any concerns." (*Id.* at 72.) The parties then agreed that Plaintiff would "produce all text messages responsive to RFPs 234 and 237–255 in a new production," including all text messages previously produced. (*Id.* at 68; *see id.* at 63–70.) On February 1, 2019, the parties filed a joint motion requesting additional time to meet and confer regarding

---

[1] A more detailed recitation of the procedural background related to Defendants' Motion to Compel (ECF No. 79) is set forth in the Court's Order granting the motion (ECF No. 121 at 4–7) and will not be repeated here.

[2] The Court permitted the parties to complete Plaintiff's deposition by January 11, 2019. (ECF No. 126 ¶ 1.)

Plaintiff's January 4, 2019 supplemental production, which the Court subsequently granted. (ECF Nos. 138, 139.)

On February 12, 2019, Plaintiff produced 2,786 text messages "allegedly containing all responsive text messages in his possession." (ECF Nos. 152 at 5; 152-2 ¶ 15.) However, Defendants found this production "suspicious" because it appeared to include text messages sourced from cell phones other than Plaintiff's. (ECF No. 152 at 5.) Additionally, Defendants could not identify any one-on-one text messages in the production between Plaintiff and eight of the eighteen key Wakaya individuals identified in RFPs 237–255. (ECF No. 152-3 ¶ 25.)

On February 15, 2019, before Defendants filed the instant motion, Mr. Awerbuch e-mailed Mr. Schofield voicing concerns about the accuracy and completeness of Plaintiff's February 12, 2019 production and again "asked for [Plaintiff]'s cooperation in obtaining text message logs from Verizon."[3] (ECF No. 152 at 6.) Plaintiff "again refused," so the parties left a joint voicemail message with the Court requesting the Court's assistance in resolving the parties' dispute. (*Id.*; ECF No. 141.) On February 21, 2019, the Court held a telephonic Discovery Conference with counsel for the parties and subsequently issued a Briefing Schedule for Defendants to file a motion to reopen discovery for the limited purpose of issuing a Rule 45 subpoena on Verizon. (ECF No. 143.)

On February 22, 2019, Mr. Awerbuch e-mailed Mr. Schofield asking for more information from Plaintiff's ESI vendor regarding the source of text messages in Plaintiff's February 12, 2019 production. (ECF No. 152-3 at 106.) That same day, Mr. Schofield replied that according to Plaintiff's ESI vendor, all of text messages produced on February 12, 2019 "were extracted directly from [Plaintiff]'s phone." (*Id.*) However, on March 6, 2019, Mr. Schofield sent a follow-up e-mail to Mr. Awerbuch, explaining that after further

---

[3] Although Defendants cite to "Exhibit P" as support for this proposition, Defendants do not include this February 15, 2019 e-mail correspondence with opposing counsel in Exhibit P.

review, "many of the messages sent to/from [Plaintiff] may have come from another custodian in addition to [Plaintiff]." (*Id.* at 104.)

On March 8, 2019, Defendants filed this motion to reopen discovery, for the limited purposed of issuing a subpoena on Verizon for Plaintiff's text message logs from January 1, 2015, through July 1, 2016. (ECF No. 152.) Plaintiff filed an opposition on March 15, 2019.[4] (ECF No. 154.) Defendants filed a reply on March 20, 2019. (ECF No. 157.)

## II. DISCUSSION

### A. Legal Standard

"District courts have 'broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16.'" *Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir. 2012) (quoting *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir. 2011)). Good cause must be shown for modification of the scheduling order regulating discovery. Fed. R. Civ. P. 16(b)(4); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608–09 (9th Cir. 1992). The "good cause" requirement primarily considers the diligence of the party seeking the amendment. *Johnson*, 975 F.2d at 609. When the motion to extend time is made after time has expired, the court must also consider excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B).

In addition, when deciding whether to amend a pretrial scheduling order and reopen discovery, a court considers the following factors:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

---

[4] Plaintiff subsequently withdrew his opposition and filed an amended opposition on March 20, 2019. (ECF No. 156.)

4

16-cv-02922-BTM-JLB

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (quoting *United States* ex rel. *Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir. 1995)).

**B.     Parties' Arguments**

    1.     Defendants' Motion

In their motion, Defendants argue that the Court should allow them to subpoena Verizon for two main reasons. First, Defendants contend that Plaintiff has "failed to produce volumes of text messages," and the Verizon subpoena will "likely provide information relevant to resolve" this concern. (ECF No. 152 at 2.) Specifically, Defendants allege that Plaintiff has not produced any one-on-one text messages (as opposed to group text messages) between him and eight "key witnesses": Andre Vaughn, Dave Pitcock, Barb Pitcock, Todd Smith, Mike Randolph, Mike Kolinski, Jimmy Hyun, and Maxandra Desrosiers. (*Id.*; ECF No. 152-2 ¶ 25.) To support this proposition, Defendants cite to Plaintiff's and some of these individuals' deposition transcripts, in which the deponent was asked about the nature of his or her communications with Plaintiff. Defendants also cite to e-mails exchanged between Plaintiff and some of these individuals regarding past or future text message communications. For example:

- Plaintiff testified that he "probably" or "probably, yes" has exchanged text messages with each of these eight individuals from January 1, 2015, through July 1, 2016. (ECF No. 152-3 at 9–12.)
- Mr. Randolph testified that "in a given month" it was "likely" that he sent or received "more than ten" text messages from Plaintiff. (*Id.* at 26–27.)
- Mr. Kolinski testified that he has had "one-on-one text communications" with Plaintiff consistently from 2008 to the present. (*Id.* at 31–32.)
- Mr. Smith testified that he "most likely" had "one-on-one text message conversations" with Plaintiff from January 1, 2015, through July 1, 2016. (*Id.* at 36.)

///

- Mr. Vaughn wrote that he "will shoot u a text as well" in an August 9, 2015 e-mail addressed to Plaintiff. (*Id.* at 53.)
- Ms. Desrosiers wrote "[p]er our text conversation on Wednesday . . ." in an August 7, 2015 e-mail addressed to Plaintiff. (*Id.* at 60.)

Second, Defendants argue that not all of the 2,786 text messages that Plaintiff produced on February 12, 2019, were imaged from Plaintiff's cell phone. (ECF No. 152 at 2.) To support this proposition, Defendants provide that the February 12, 2019 production contained "duplicate and triplicate" versions of the same message, but each message "contained slightly different information in the headers," such as the way contact names were spelled, if a contact was identified solely by a phone number, and the ordering of recipients. (ECF Nos. 152 at 5; 152-1 ¶ 7; 152-2 ¶¶ 17–20.) For example, some otherwise identical text messages identified Mike Kolinski solely by his phone number and not by name (ECF No. 152-3 at 80–85, 87–92, 94–97, 99–102), "Rick Anson" as "Rick Anston" (*id.* at 80–85, 99–102), "Jimmy Hyun" as "Jimmy Huyn" (*id.* at 84–85, 87–92), and "Mike Randolph" as "Mike Randolf" (ECF No. 152-2 ¶ 20). Defendants argue that differing headers on otherwise identical text messages "indicat[e] that the messages were sourced from different devices." (ECF Nos. 152 at 5; 152-2 ¶ 8.) Defendants also note that "[Plaintiff] failed to produce customary metadata," such as a field identifying the text message's custodian, which "would assist in determining the source of the specific text messages." (ECF No. 152 at 5; 152-1 ¶¶ 9–11; 152-2 ¶ 15.)

Additionally, Defendants found that of the 2,786 text messages, 2,566 (92%) were messages that included Brytt Cloward, Patti Gardner, Mike Casperson, or Blake Graham, whose cell phones were imaged in the concurrent case, *Youngevity International, Corp. v. Smith, et al.*, 3:16-cv-00704-BTM-JLB (S.D. Cal.) ("Concurrent Case"). (ECF Nos. 152 at 6; 152-2 ¶ 23.) Defendants argue that the text messages were "heavily weighted with messages involving those individuals because their phones were the actual sources" of the February 12, 2019 production. (ECF No. 152 at 6.)

///

As to diligence, Defendants contend that they are only now seeking to subpoena Verizon because they "could only evaluate flaws in [Plaintiff]'s text message production" after the production occurred on February 12, 2019. (*Id.* at 9.) Additionally, Defendants state that they waited to present the issue to the Court because Plaintiff's counsel had "pledged that he was 'willing to work further with his vendor to double check that all texts were produced.'" (*Id.*; ECF No. 152-3 at 70.)

2. Plaintiff's Opposition

In response, Plaintiff states that "he is not concerned by the requested subpoena." (ECF No. 156 at 5.) However, Plaintiff argues that Defendants' motion "asserts a wide variety of speculation, conjecture, [and] inaccurate 'facts'" and that "there is no known justification for reopening discovery at this time." (*Id.* at 2.)

First, Plaintiff asserts that Defendants have "no concrete evidence of any additional responsive text messages," and Plaintiff testified at his deposition that he "did not delete any text messages." (*Id.* at 6.) Regarding the deposition transcripts that Defendants cite to, Plaintiff argues that the Court should not narrowly interpret these witnesses' "imprecise responses to the vague and generalized questions." (*Id.* at 8.) Moreover, Plaintiff contends that he has in fact produced one-on-one text messages between himself and Mr. Smith, Mr. Randolph, and Mr. Kolinski, and attaches five examples of such as Exhibit 1 to his opposition. (*Id.*; ECF No. 156-2 at 7–11.)

Second, Mr. Schofield submits that he did on March 6, 2019, notify defense counsel "that that February 12 production apparently contained responsive text messages to and from [Plaintiff] that were sourced from other devices in addition to [Plaintiff]'s device." (ECF No. 156-2 ¶ 13.) By way of explanation for this "misunderstanding," Plaintiff attaches the declaration of his document-management vendor, Lane Perkins, who is the ESI Project Manager for Salt Lake Legal ("SLL"). (ECF No. 156-1.)

In his declaration, Mr. Perkins states that SLL extracted all text messages from Plaintiff's cell phone using "Cellebrite" on June 19, 2017, for discovery purposes in the Concurrent Case. (*Id.* ¶ 3.) After extraction, SLL loaded the text messages into a database

7

in "LAW PreDiscovery." (*Id.* ¶ 4.) This database also contained previously-loaded text messages "from other parties in the [Concurrent] case." (*Id.*) SLL then used its "standard de-duplication process" on all the text messages in the database. (*Id.*) This de-duplication process removed "any identical copies of text messages" from the database such that "only one unique copy of each text message remained in the database." (*Id.*) Because Plaintiff's cell phone "was one of the last devices imaged," "any text messages on [Plaintiff]'s device that had an identical copy located on any of the early devices" were "removed from the database." (*Id.* ¶ 5.)

Mr. Perkins also provides that when preparing Plaintiff's text messages for discovery in the instant case, SLL "used Cellebrite to locate any responsive text messages to or from [Plaintiff] and gave all of those text messages a 'TM' prefix in LAW PreDiscovery." It was not until "recently upon further investigation," that Mr. Perkins "discovered for the first time that text messages from devices other than [Plaintiff]'s device appeared to have also been collected" during this process. (*Id.* ¶ 15.)

As to diligence, Plaintiff argues that Defendants have "had ample opportunity to issue third-party subpoenas if [they] had concerns but failed to do so." (ECF No. 156 at 7.) Plaintiff contends that Defendants' characterization of the February 12, 2019 production as "a wholly new production," is incorrect, as the production was simply a single production of all text messages sent to or from Plaintiff produced in both this case and the Concurrent Case. (*Id.*) The "bottom line," Plaintiff asserts, is that "Plaintiff has produced all responsive text messages in his possession, custody, or control," and "the inclusion of text messages from other devices in addition to [Plaintiff]'s device does not change [this] fact." (ECF No. 156 at 3, 6.)

3. <u>Defendants' Reply</u>

In reply, Defendants maintain their previously asserted positions, but also argue an additional reason for why the Court should permit Defendants to subpoena Verizon. Defendants contend that the headers in the text messages produced on February 12, 2019, which purportedly show the sender and recipient(s) of each text message, are inaccurate.

(ECF No. 157 at 4–7.) Based on this theory, Defendants rebut Plaintiff's argument that he has produced one-on-one text messages with Mr. Smith, Mr. Randolph, and Mr. Kolinski. (*Id.* at 5.)

In support of this position, Defendants explain that when the five text messages Plaintiff alleges are one-on-one text messages "are [each] viewed in context and as a part of conversation, it is apparent that [Ms.] Gardner or [Mr.] Cloward were [also] recipients of each text message." (*Id.*) For example, in a text message sent by Ms. Gardner to both Plaintiff and Mr. Randolph, Ms. Gardner wrote: "I haven't got to the convention agenda. I've been working on other stuff. If you want it today before you leave, I will get it done. Other wise [sic] I will wait and do it while I'm watching TV later on." (ECF No. 157-3 at 18.) Three minutes later, Plaintiff responded, stating "No rush," but the text message's header indicates that the message was sent only to Mr. Randolph and not to Ms. Gardner. (*Id.* at 19.) Plaintiff cites to this text message as an example of a one-on-one text message between himself and Mr. Randolph (ECF No. 156-2 at 8), but Defendants argue that it appears Ms. Gardner was a recipient as well (ECF No. 157-2 ¶ 8).

To further illustrate, Defendants provide that in a text message sent by Ms. Gardner to Plaintiff and Mr. Smith, Ms. Gardner wrote, "10 hours of driving alone, a hug from Bryndi Cloward and I made it safely. Tomorrow is Martins Cove. [M]uch needed alone time. God is good! Thanks for believing in me[.]" (ECF No. 157-3 at 21.) Seven minutes later, Mr. Smith responded, stating, "Always!!! Take whatever time you need!" (*Id.* at 22.) This response by Mr. Smith is one of the text messages Plaintiff provides as an example of a one-on-one text message between himself and Mr. Smith (ECF No. 156-2 at 11) and, indeed, the text message's header indicates that this message was sent only to Plaintiff and not to Ms. Gardner (ECF No. 157-3 at 22). Twenty-seven minutes after Mr. Smith's text message, Plaintiff responded, stating, "Happy to hear you're there safely! We will hold down the fort. Be well and be safe! Remember, you're the WoMan!" (*Id.* at 23.) However, the text message's header indicates that this message was sent only to Mr. Smith and not to Ms. Gardner. (*Id.*) Defendants argue that this context indicates that the text

9

messages Plaintiff represents to be one-on-one messages are actually group text messages.[5] (ECF No. 157 at 6–7.)

And finally, contrary to Plaintiff's assertion that the February 12, 2019 production was not a "new production," Defendants argue that Plaintiff "produced hundreds if not thousands of unique text message for the first time on February 12, 2019."[6] (*Id.* at 6; ECF No. 157-2 ¶ 12.)

**C.   Analysis**

   1.   <u>Defendants' Diligence and Excusable Neglect</u>

Before turning to the merits of Defendants' arguments regarding the importance of the Verizon subpoena, the Court must first determine whether Defendants have shown the diligence and excusable neglect required to reopen discovery. Federal Rule of Civil Procedure 6(b)(1)(B), 16(b)(4); *Johnson*, 975 F.2d at 609. Here, Defendants brought the instant issue to the Court's attention on February 19, 2019, approximately two months after the close of discovery. (ECF Nos. 126, 141.) Moreover, Defendants' motion focuses mainly on the potential value of obtaining Plaintiff's text message logs from Verizon, as opposed to their diligence or excusable neglect in waiting to subpoena Verizon. Nevertheless, Defendants do contend that they are only now seeking to subpoena Verizon because they could not evaluate the flaws in Plaintiff's February 12, 2019 production until after it occurred, and the production contained "hundreds if not thousands" of text messages not previously produced. (ECF Nos. 152 at 9; 157 at 6.) Additionally, as previously stated, Defendants waited to present the instant issue to the Court because

---

[5] Defendants additionally support their position that the headers on the text messages Plaintiff produced are inaccurate with the declaration of Michael Kunkel, the Director of Investigative Services of Setec Security Technologies, Inc. (ECF No. 157-1.) In his declaration, Mr. Kunkel states that Cellebrite and LAW PreDiscovery "are not always compatible," and issues in compatibility between the two software programs may "lead to truncated or inaccurate content in the header fields." (*Id.* ¶ 11.) Mr. Kunkel also provides that after reviewing the February 12, 2019 production and Mr. Perkins's declaration, "[he does] not believe that all information on those text messages' headers is accurate." (*Id.* ¶ 14.)

[6] Defendants contend that Plaintiff conceded in a March 20, 2019 e-mail sent between counsel that "his vendor's declaration on this point was misleading." (ECF Nos. 157 at 6; 157-3 at 41.)

1  Plaintiff's counsel had "pledged that he was 'willing to work further with his vendor to
2  double check that all texts were produced.'" (ECF Nos. 152 at 9; 152-3 at 70.)

3       In its Order granting Defendants' Motion to Compel, the Court set January 4, 2019—
4  seven days after the close of discovery—as the deadline for Plaintiff to produce all
5  documents responsive to the RFPs at issue. (ECF No. 121 at 18.) Given that Plaintiff's
6  deadline to produce all responsive documents to the RFPs at issue was after the close of
7  discovery, Defendants could not have brought any issues with this production to the
8  Court's attention until after January 4.

9       Additionally, the Court will not fault Defendants for waiting until February 19, 2019,
10 to request leave to subpoena Verizon, for Defendants were relying on Plaintiff's counsel's
11 repeated assurances that: (1) Plaintiff's counsel would continue to work with his ESI
12 vendor to ensure that a complete and accurate production of all responsive text messages
13 was made; and (2) all text messages produced were imaged from Plaintiff's cell phone. It
14 is unclear from the briefing before the Court whether Defendants were on notice that the
15 text messages Plaintiff produced prior to the February 12, 2019 production were not all
16 imaged from his cell phone. However, it was not until after the close of discovery that
17 Defendants affirmatively learned that at least Plaintiff's February 12, 2019 production
18 included text messages imaged from other witnesses' devices. Regardless of whether
19 Plaintiff's February 12, 2019 production contained any text messages not previously
20 produced, Defendants' reliance on Plaintiff's assurances warrants a finding of at least
21 excusable neglect to reopen discovery.

22     2. <u>Unreliability of Plaintiff's Text Message Headers</u>

23       Having found that Defendants have shown the diligence and excusable neglect
24 required to reopen discovery, the Court turns to the merits of Defendants issuing a
25 subpoena on Verizon for Plaintiff's text message logs. The Court finds that Plaintiff's
26 production of text messages is at a minimum, unreliable as to accuracy of the sender and
27 recipient(s), which warrants giving Defendants leave to subpoena Verizon. As Defendants'
28 argument in reply shows, the text messages that Plaintiff alleges are one-on-one

communications between Plaintiff and various individuals do not appear to be one-on-one communications when taken in context with other text messages. (ECF No. 157 at 5–6.) This alone brings into question the accuracy of the text messages' headers.

Further, some of the duplicate and triplicate text messages that Plaintiff has produced concerningly do not list identical recipients in their headers. To illustrate, in one such duplicate set of text messages, the first message's header identifies Ms. Gardner as the sender and Plaintiff, Mr. Smith, Mr. Randolph, Mr. Cloward, Mr. Kolinski (by phone number), Mr. Barney, and Mr. Anson as the recipients. (ECF No. 152-3 at 80.) However, the second message's header does not list Mr. Cloward as a recipient but adds Mr. Casperson. (*Id.* at 81.) Again, in a triplicate set of text messages, the first text message's header identifies Mr. Randolph at the sender and Plaintiff, Ms. Gardner, Mr. Cloward, Mr. Javia (by phone number), Mr. Philips, Mr. Kolinski (by phone number), and Mr. Hyun (spelled "Huyn") as the recipients. (*Id.* at 87.) However, the second text message's header does not identify Ms. Gardner as a recipient but adds Mr. Casperson. (*Id.* at 88.) The third text message's header does not list Mr. Cloward as a recipient but adds both Ms. Gardner and Mr. Casperson. (*Id.* at 89.) This lack of uniformity in recipients in otherwise identical text messages deeply concerns the Court as to the reliability of Plaintiff's text message production.

Moreover, the Court is troubled by the fact that Plaintiff's text message production includes text messages that were not imaged from his own cell phone. Plaintiff contends that producing text messages from other witnesses' cell phones does not prejudice Defendants, because "[t]he body of each text message shows the sender and recipient," exactly as it would if it was produced solely from Plaintiff's cell phone. (ECF No. 156 at 6.) To the contrary, as the above inconsistencies show, Defendants are unable to rely on the recipient fields in the headers of Plaintiff's text messages and are therefore prejudiced by the manner in which Plaintiff has produced his text messages.

///

///

12

16-cv-02922-BTM-JLB

The Court therefore finds that Defendants are entitled to subpoena Verizon for Plaintiff's text message logs as an attempt to remedy the unreliability of Plaintiff's text message productions.[7]

### III. CONCLUSION

For the reasons set forth above, Defendants' motion to reopen discovery for the limited purpose of issuing a subpoena on Verizon Wireless for Plaintiff's text message logs from January 1, 2015, through July 1, 2016, is **GRANTED** (ECF No. 152). Defendants shall have until **April 25, 2019** to subpoena Verizon. No other discovery is authorized at this time.

**IT IS SO ORDERED.**

Dated: April 10, 2019

Hon. Jill L. Burkhardt
United States Magistrate Judge

---

[7] Because the Court finds that the text messages that Plaintiff has produced are unreliable, and this unreliability warrants the issuance of a subpoena to Verizon, the Court declines to address Defendants' argument that a subpoena is warranted because Plaintiff has not produced all text messages in his possession.