UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM ANDREOLI,<br><br>                              Plaintiff,<br>v.<br>YOUNGEVITY INTERNATIONAL INC., *et al.*,<br>                             Defendants. | Case No. 3:16-cv-02922-BTM-JLB<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON DISTRIBUTOR CLAIM**<br><br>**[ECF No. 56]** |

Before the Court is Defendants Youngevity International Corp. ("Youngevity"), Steve Wallach, Michelle Wallach, and Dave Briskie's (collectively, "Defendants") motion for partial summary judgment on Plaintiff's First Claim for Relief, Breach of Contract. (ECF No. 56.) On February 22, 2017, Plaintiff filed his First Amended Complaint against Defendants. (ECF No. 3). On March 21, 2017, Defendants moved to dismiss, *inter alia*, Plaintiff's claims for breach of contract relating to four distributorships controlled by Plaintiff, arguing that such claims were subject to a binding arbitration agreement. (ECF No. 12.) On March 23, 2018, the Court denied without prejudice Defendant's motion to dismiss on that issue,

concluding that Defendants had failed to satisfy their burden to establish the existence of an agreement to arbitrate. (*See* ECF No. 21, at 9-11 ("Defendants are free to raise the issue in a motion for summary judgment . . . .").) On April 11, 2018, Plaintiff filed his Restated First Amended Complaint against Defendants. (ECF No. 22.) On July 20, 2018, Defendants filed their instant motion for partial summary judgment, in which they renew their arguments seeking the dismissal of Plaintiff's claims for breach of contract relating to the distributorships (the "Distributorship Claims") because such claims are purportedly subject to a binding arbitration agreement. (ECF No. 56; *see also* ECF No. 22, ¶¶ 84-101, 130-39.) For the reasons set forth herein, Defendants' instant motion (ECF No. 56) is **DENIED**.

**I. STANDARD**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248-50.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. *Id.* at 322-23. "Disputes over irrelevant or unnecessary facts will

not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to demonstrate that a genuine issue of disputed fact remains. *Celotex*, 477 U.S. at 314. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256. Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

The court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor." *Anderson*, 477 U.S. at 255.

**II. DISCUSSION**

The Federal Arbitration Act ("FAA") permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). Thus, arbitration agreements "must be enforced, absent a

ground for revocation of the contractual agreement." *Id.* Under the FAA, a court's role is limited to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (internal quotations and citations omitted)). Plaintiff does not dispute that Defendants' proffered arbitration agreement, should it be found enforceable, encompasses Plaintiff's claims relating to the four distributorships controlled by Plaintiff. Rather, Plaintiff disputes the existence of such arbitration agreement. Accordingly, because Defendants seek to compel arbitration, they bear "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telcoms. Am. LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (citations omitted).

Relevant to the Distributorship Claims, Plaintiff alleges that Defendants breached the Amended Purchase Agreements between Plaintiff and Youngevity by terminating four "multilevel marking distributorships" (the "Four Distributorships")[1] that Plaintiff controlled that were "integrated into the distributorship hierarchies of Youngevity." Further, Plaintiff alleges that, contrary to the requirements of the Amended Purchase Agreements, "Distributor Agreements," and "a consistent and routine course of dealing" from October 25, 2011 through November 30, 2015 "under which [t]he Four Distributorships were paid their earned commissions each month[,]" Youngevity stopped making the required commission payments after February 2016. (ECF No. 22, ¶¶ 84-101, 130-39; *see also id.* ¶ 24 & Exs. A & B.) Defendants argue that Plaintiff should be compelled to arbitrate these claims because the Four Distributorships purportedly

---

[1] The four distributorships at issue are: (1) "ID# 100006-WDKP Enterprises"; (2) "ID# 100016-Admin 1110061"; (3) "ID# 100675-Admin 1110062"; and (4) "ID# FD11-Financial Destination." (ECF No. 22, ¶ 88.)

agreed to Youngevity's distributorship agreements which incorporate provisions (the "Arbitration Provisions") providing:

> In the event of a dispute with [Youngevity], [the distributorship] and [Youngevity] agree to participate in mediation in an earnest attempt to resolve the dispute prior to submitting it to binding arbitration pursuant to the Commercial Arbitration Rules then in effect of the American Arbitration Association, provided, however, that injunctive relief sought by [Youngevity] against any party shall be excluded from this clause.

(ECF No. 56-3, at 17, 46.)

According to Mr. Wallach, the Four Distributorships agreed to be bound by these Arbitration Provisions when Plaintiff or other agents of the Four Distributorships "logged into the back-office" platform of Youngevity's website to manage their distributorship accounts. (ECF No. 56-2, ¶¶ 10-15.) In connection therewith, Mr. Wallach attests that "[t]he first time an individual logs into his or her back office, he or she must affirmatively agree to be bound by Youngevity's distributorship agreement as a condition precedent to accessing their back-office platform online . . . . [and] before they can proceed further into the online system." (ECF No. 56-2, ¶ 5; ECF No. 56-3, at 3-4; *see also* ECF No. 56-3, at 5-60.) He further attests that, "after each instance in which Youngevity updates its distributor agreement, each Youngevity distributor must agree to be bound by that updated distributor agreement before proceeding to his or her back-office" and that "Youngevity maintains an activity log which tracks each instance when a Youngevity distributor logins [sic] into their back office and agrees to Youngevity's distributor agreement then in effect." (ECF No. 56-2, ¶¶ 6-7; ECF No. 56-3, at 61-72.) Notably, the agreements proffered by Defendants, which contain the Arbitration Provisions and were purportedly agreed-to by Plaintiff or other agents of the Four Distributorships upon logging into the Youngevity back-office platform, are entitled "Youngevity Policies and Procedures." (ECF No. 56-3, at 6, 23.) Further, the only indication on the "activity log" maintained by Youngevity that a

distributor has agreed to the terms of such Youngevity Policies and Procedures is a date stamp followed by the statement "Extranet Login Agreed to Terms." (*Id.* at 62, 64, 66, 68, 70, 72.)

In response to Mr. Wallach's attestations, Plaintiff attests that he has "not agreed to any provision requiring arbitration of the claims [he] has brought in this lawsuit[,]" has "not logged into the back-office for any purpose than conducting business as the President of Youngevity and in performance of those duties," and "did not knowingly in the capacity of a distributor click anything to indicate affirmative agreement to be bound by Youngevity's distributor agreement or any mandatory arbitration provision." (ECF No. 70-1, ¶¶ 4-5.) Moreover, Plaintiff appears to argue that it was Youngevity's agents, as opposed to agents of the Four Distributorships, that may have signed on to the back-office platforms and thereby agreed to the Arbitration Provisions, as Plaintiff attests that "any customer service representative from the New Hampshire, Utah, or California offices" of Youngevity, as well as Youngevity's Vice President of Operations, Mike Kolinski, "had the ability to log in, accept the distributor agreement, and access the back-office information for the distributors."[2] (*Id.* ¶¶ 6-7.)

Based upon the record, the Court concludes that Defendants have not carried their burden to demonstrate that there is no material factual dispute as to whether the Four Distributorships and, by extension, Plaintiff, agreed to be bound by the Youngevity Policies and Procedures or the Arbitration Provisions. While Defendants argue that "the Four Distributorships could not exist unless bound by Youngevity's [d]istributor agreement[,]" Defendants themselves admit that, "as Youngevity President, [Plaintiff] was empowered to seek alteration of the Youngevity distributor agreement" and therefore the distributor agreement(s) relied

---

[2] Plaintiff also attests that Mr. Kolinski "managed [Plaintiff's] distributor positions." (ECF No. 70-1, ¶ 6.)

6

3:16-cv-02922-BTM-JLB

upon by Plaintiff may have in fact been altered to remove the Arbitration Provisions. (ECF No. 56-1, at 6-7; ECF No. 72, at 2 (citing ECF No. 12-2, ¶ 5; ECF No. 56-2, ¶ 5; and ECF No. 56-3, at 4).) Indeed, Plaintiff does not define the term "Distributor Agreements" in the Restated First Amended Complaint nor does he attach the Distributor Agreements as exhibits thereto. (*See* ECF No. 22, ¶¶ 137, 139.) Nor does Plaintiff provide sufficient detail in describing the terms of the Distributor Agreements that a reasonable factfinder could only conclude that the Youngevity Policies and Procedures presently proffered by Defendants (ECF No. 56-3, at 5-60) are the "Distributor Agreements" referred to and relied upon by Plaintiff in support of the Distributorship Claims. Further, the Youngevity Policies and Procedures do not bear the Four Distributorships' respective names or signatures of agents thereof. (*See id.*) Nor do Youngevity's activity logs bear the names, signatures, or login credentials of the individuals who purportedly agreed to be bound by the terms of the Youngevity Policies and Procedures, and by extension, the Arbitration Provisions.[3] (*See* ECF No. 56-3, at 62, 64, 66, 68, 70, 72.) Moreover, Defendants ask the Court to infer from Plaintiff's statements concerning Mr. Kolinski and Youngevity's customer service representatives that such individuals had the authority to act on behalf of Plaintiff and/or the Four Distributorships. (*See* ECF No. 72, at 5-6 (citing ECF No. 70-1, ¶ 6-7).) Yet a reasonable factfinder could alternatively infer from such attestations that while such individuals had the *ability* to access Youngevity's back-office platform for the Four Distributorships, the individuals lacked *authority* from Plaintiff or the Four Distributorships to do so. Finally, while Defendants' remark that it is "strange" for

---

[3] Notably, the activity logs *do* bear the login credentials of the individuals who have taken other actions with regards to the Four Distributorships' back-office platforms. (*See, e.g.*, ECF No. 56-3, at 62 ("12/4/2015 vcaballero accessed this page on Dec 4 2015 5:43PM").)

1  Plaintiff, "the former President of Youngevity who oversaw distributor compliance
2  with the Youngevity Distributor Agreement, to argue that his own Four
3  Distributorships were somehow not bound by the very agreement he enforced over
4  all such distributorships" (ECF No. 72, at 2), the creation and existence of the Four
5  Distributorships was somewhat unique in comparison to other Youngevity
6  distributorships given the Four Distributorships preexisting "distributor network and
7  hierarchies . . . were integrated into the distributorship hierarchies of Youngevity"
8  as a result of the transactions underlying the Amended Purchase Agreements.
9  (*See* ECF No. 22, ¶¶ 84-90, 92-93.)  Thus, it would not be unreasonable to infer
10 that the terms of the Distributor Agreements differed materially from those
11 contained within more routine distributor agreements entered into by Youngevity
12 with other distributorships.

13 Thus, taking all facts and inferences in the light most favorable to the nonmoving party, the Court concludes that Defendants have failed to carry their burden to demonstrate that there are no genuine disputes of material fact as to the existence of a binding arbitration agreement.

**III. CONCLUSION**

Based upon the foregoing, Defendants are not entitled to summary judgment on Plaintiff's Distributorship Claims and their motion thereon (ECF No. 56) is therefore **DENIED**.  As such, the Court must "proceed summarily to the trial" of the limited issue of the existence of an enforceable agreement to arbitrate.  9 U.S.C. § 4.  Whether such trial will be a jury trial or a bench trial is at Plaintiff's discretion. *See id.* ("If no jury trial be demanded by the party alleged to be in default, . . . the court shall hear and determine such issue.").

The Court intends to set the limited issue of the existence of an arbitration agreement for trial in December 2019.  The Court will hold a status conference on October 28, 2019 at 2:00 p.m. to set the date and terms of this trial.  Accordingly, the parties shall meet and confer to agree upon the terms of this trial and narrow

the facts and other issues for resolution at trial to the greatest extent possible.

**IT IS SO ORDERED.**

Dated: September 18, 2019

_____
Honorable Barry Ted Moskowitz
United States District Judge